UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN -- SOUTHERN DIVISION

RYAN CURRIER,
        Plaintiff,

 -vs-                                          Case No. 2:14-cv-12179
                                               Hon. Sean F. Cox
                                               Magistrate Judge: Paul J. Komives

PDL RECOVERY GROUP, LLC, *et. al.*,
        Defendants.

## PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO SET ASIDE CLERK'S ENTRY OF DEFAULT

For the reasons set forth in the brief below, Plaintiff Ryan Currier ("Mr. Currier", or "Plaintiff") requests that the Court deny Defendant PDL Recovery Group, LLC's ("PDL", or "Defendant PDL"), Defendant Jamie Belstadt's ("Mr. Belstadt" or "Defendant Belstadt) and Defendant Mara Pfalzer's ("Ms. Pfalzer" or "Defendant Pfalzer") (collectively, "Defendants") Motion to Set Aside Clerk's Entry of Default.

Respectfully Submitted,

By:  s/ Amanda Longendyke
Amanda Longendyke (P-77777)
LYNGKLIP & ASSOCIATES
CONSUMER LAW CENTER, PLC
Attorney For Ryan Currier
24500 Northwestern Highway, Ste. 206
Southfield, MI 48075
Phone: (248) 208-8864
amanda@michiganconsumerlaw.com

Dated: December 15, 2014

1

UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN -- SOUTHERN DIVISION

RYAN CURRIER,
      Plaintiff,

 -vs-                          Case No. 2:14-cv-12179
                                    Hon. Sean F. Cox
                                    Magistrate Judge: Paul J. Komives

PDL RECOVERY GROUP, LLC, *et. al.*,
      Defendants.

**BRIEF IN SUPPORT OF
PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO
SET ASIDE CLERK'S ENTRY OF DEFAULT**

**Issues Presented by Motion**

*Have the Defendants met their burden of proof showing lack of service,*

*excusable neglect and a meritorious defense sufficient to warrant setting*

*aside the Clerk's entries of default?*

i

## Index of Authorities

### Federal Rules

Fed.R.Civ.P. 55 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 14

Fed.R.Civ.P. 5(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 8

### Federal Cases

*African Methodist Episcopal Church, Inc. v. Ward*,
185 F.3d 1201 (11th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*Amernational Industries Inc. v. Action-Tungram Inc.*,
925 F.2d 970 (6th Cir.1991), cert. denied, 501 U.S. 1233 (1991) . . . . . . . . . . . 7, 13

*Baltimore-Washington Tel. Co. v. Hot Leads Co.*,
584 F. Supp. 2d 736 (D.Md. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Black v. U.S.,* 2014 WL 5847605 (E.D.Mich. 2014) (Rosen, J.) . . . . . . . . . . . . . . 9

*Dassault Systemes, SA v. Childress*, 663 F.3d 832 (6th Cir. 2011) . . . . . . . . . . . . . 5

*INVST Financial Group, Inc. v. Chem-Nuclear Systems, Inc.*,
815 F.2d 391 (6th Cir.1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 13

*Maryland v. Universal Elections*, 787 F. Supp. 2d 408 (D.Md. 2011) . . . . . . . . 11

*O.J. Distrib., Inc. v. Hornwell Brewing Co.*, 340 F.3d 345 (6th Cir. 2003) . . . . 5, 6

*Shepard Claims Service, Inc. v. William Darrah & Assocs.*,
796 F.2d 190 (6th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6 , 7

*Texas v. Am. Blastfax*, 164 F. Supp. 2d 892 (W.D. Tex. 2001) . . . . . . . . . . . . . . 11

*Thompson v. American Home Assur. Co.*, 95 F.3d 429 (6th Cir. 1996) . . . . . . . . 13

*United Coin Meter v. Seaboard Coastline RR.*, 705 F.2d 839 (6th Cir. 1983)  . . . . 6

*United States v. Real Property & All Furnishings Known as Bridwell's Grocery & Video*, 195 F.3d 819 (6th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

# **Table of Contents**

Issues Presented by Motion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

Index of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

Table of Contents  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iv

Introduction  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

Factual History of Service and Notices Provided to Defendants  . . . . . . . . . . . . . .  2

Law and Argument  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5
      I.      Standard of review  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5
      II.     The Court should not set aside the Clerk's entries of default. . . . . . .  6
               A.     Defendants acted culpably when they failed to
                     respond timely to multiple notices.  . . . . . . . . . . . . . . . 7
               B.     Defendants have failed to establish a meritorious
                     defense. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
               C.     Plaintiff will suffer prejudice from the setting aside of the
                     defaults.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

## Introduction

With their Motion, Defendants do not challenge service in this matter. Instead, they claim that the Clerk's entries of default should be set aside for excusable neglect, and that Defendants possess meritorious defenses. While Defendants bear the burden of proof on these claims, they have submitted no declarations or other evidence to support these arguments, and rely on the naked claims of procedural irregularity and a viable defense.

While Defendants claim that they would have answered had they known of the impending default, the record evidence establishes that Mr. Currier provided repeated notice of the pending proceedings on Defendants' attorney.[1] At every step, Plaintiff's Counsel provided the Defendants with notice of Plaintiff's requests and the Clerk's subsequent entries of default through service by email on Attorney Benson. In response, Attorney Benson affirmatively stated that he would not answer and would allow a default judgment to be taken, because he specializes in setting aside default judgments. **Thus, Defendants' actions do not constitute "excusable neglect" but rather appear to be a purposeful strategy designed to delay the proceedings, drive up costs of litigation, and deter litigation against culpable defendants.** As

---

[1]Consistent with Rule 5(b)(1), Counsel for Mr. Currier provided notice of all actions to Mr. Michael Benson, attorney for Defendants. See attached Exhibits 2 and 3.

1

to the claims of a meritorious defense, the Defendants have failed to provide any evidence to support their claims and have misstated the controlling law.

For the reasons set forth below, the Court should deny Defendants' Motion and allow the Plaintiff to move forward with discovery as to damages[2] to be presented at a Default Hearing.

## Factual History of Service and Notices Provided to Defendants

Mr. Currier served the First Amended Complaint and Summons *personally* upon Defendant Pfalzer on July 16, 2014. (R. 5), and upon Defendant Belstadt on July 30, 2014. (R. 6). The Court rules required Defendant Pfalzer's answer to the First Amended Complaint on August 6, 2014, and Defendant Belstadt's on August 20, 2014. Mr. Currier served PDL pursuant to this Court's Order for Alternate Service (R. 14), and its answer was due on October 17, 2014.

Counsel for the Plaintiff received a letter from New York Attorney, Michael Benson ("Mr. Benson" or "Attorney Benson"), on August 5, 2014. (*Letter from Attorney Benson dated August 5, 2014*, attached as Exhibit 2). In that letter Attorney Benson acknowledged receipt of summons and complaint and confirmed his representation of PDL Recovery Group LLC, Jamie Belstadt and Mara Pfalzer. Id.

---

[2] Plaintiff's Motion for Discovery will be filed following the filing of this response.

2

Following that letter, Plaintiff's Counsel has reached out to Attorney Benson on multiple occasions. (*Declaration of Plaintiff's Counsel Amanda Longendyke*, attached as Exhibit 3; *Email Correspondence with Attorney Michael A Benson*, attached as Exhibit 4). In specific, Counsel for Plaintiff agreed to stipulate to several extensions prior to notifying Mr. Benson on Thursday, September 4, 2014 that Plaintiff would request entry of default if Mr. Benson did not file his appearance or obtain Michigan Counsel to file an appearance on or before Friday, September 19, 2014. Id. Plaintiff's Counsel did not require an answer by this date, but simply an appearance from any counsel on behalf of the Defendants. Id.

Counsel for the Plaintiff received no response from Mr. Benson, and so on September 22, 2014 Plaintiff requested the Clerk's entry of default as to Defendant Belstadt and Defendant Pfalzer. (R. 16). The Clerk granted that request on September 23, 2014. (R. 17). Plaintiff requested the Clerk's entry of default as to Defendant PDL on October 18, 2014 (R. 21), and the Clerk granted that request on October 20, 2014 (R. 22).

Plaintiff's Counsel sent all of these docketed items to Mr. Benson by email. See Fed.R.Civ.P. 5(b)(1). Additionally, Plaintiff's Counsel sent the following message on September 22, 2014:

Pursuant to the ethical rules, I have not sent the Request for Clerk's

3

Entry of Default and accompanying Declaration directly to Mr. Belstadt and Ms. Pfalzer as you have presented yourself as their attorney. If you do not intend to represent Mr. Belstadt and Ms. Pfalzer please let me know so that I may send them notification directly.

If I do not receive a response, I will assume you still represent Mr. Belstadt and Ms. Pfalzer, as you previously confirmed, and, therefore, I will assume that you have notified your clients accordingly.

(See *Declaration of Plaintiff's Counsel Amanda Longendyke*, attached as Exhibit 3; *Email Correspondence with Attorney Michael A Benson*, attached as Exhibit 4). Mr. Benson did not respond to Plaintiff's Counsel except to say "We have retained counsel" on October 24, 2014. Id. This response came after Mr. Benson was clearly notified that the Plaintiff would request default against his clients, and after notice of those requests and subsequent entries of default were sent. Id.

Michigan Counsel, Charity Olson ("Attorney Olson"), filed her appearance on behalf of Defendants on October 29, 2014 (R. 24) and reached out to Plaintiff's Counsel the same day. (*Declaration of Plaintiff's Counsel Amanda Longendyke*, attached as Exhibit 3). At Ms. Olson's request, Counsel agreed to forego any filings while the parties attempted to resolve this matter, altogether. Id. Defendants' filed their Motion prompting this Response on December 1, 2014 (R. 25).

4

## Law and Argument

### I.   Standard of review.

PDL, Mr. Belstadt, and Ms. Pflazer move to set aside the Clerk's entries of default in this case.

Under Rule 55, a party may move to set aside a default for good cause. Fed.R.Civ.P. 55(c); *Dassault Systems, SA v. Childress*, 663 F.3d 832, 839 (6th Cir. 2011); *Shepard Claims Serv., Inc. v. William Darrah & Assocs.*, 796 F.2d 190, 194 (6th Cir. 1986). In determining whether good cause exists, the Sixth Circuit has held that the district court "enjoys considerable latitude under the 'good cause shown' standard for Rule 55(c)." *O.J. Distrib., Inc. v. Hornwell Brewing Co.*, 340 F.3d 345, 353 (6th Cir. 2003) (quoting *United States v. Real Property & All Furnishings Known as Bridwell's Grocery & Video*, 195 F.3d 819, 820 (6th Cir. 1999)). However, it is an abuse of discretion for a district court to set aside a default where the defaulting party has not offered a good reason for doing so. *African Methodist Episcopal Church, Inc. v. Ward*, 185 F.3d 1201, 1202 (11th Cir. 1999).

It is true that a strong preference for trials on the merits in federal courts exists, as it is inherent within our adversary system of justice that each side ought to be heard prior to a court's entry of judgment. However:

"[T]hat same system requires that the court have the power to compel

5

parties to appear before it.  The threat of default (and default judgment) is the court's primary means of compelling defendants in civil cases to appear before the court.  If these defaults could be put aside without cause, the threat of default would be meaningless, and courts would lose much of their power to compel participation by civil defendants."

Id. at 1203.

The criteria used to determine whether "good cause" has been shown for purposes of granting a motion under Rule 55(c) are whether "(1) the default was willful, (2) set-aside would prejudice plaintiff, and (3) the alleged defense was meritorious." *O.J. Distrib., Inc. v. Hornwell Brewing Co.*, 340 F.3d 345, 353 (6th Cir. 2003) (quoting *United States v. Real Property & All Furnishings Known as Bridwell's Grocery & Video*, 195 F.3d 819, 820 (6th Cir. 1999)); *United Coin Meter Co., Inc. v. Seaboard Coastline R.R.,* 705 F.2d 839, 844-45 (6th Cir. 1989).  Nevertheless, a district court need not consider any other factors if the party "willfully defaults by displaying either an intentional or reckless disregard for the judicial proceedings." *Shepard Claims Service, Inc. v. William Darrah & Assocs.*, 796 F.2d 190, 194-95 (6th Cir. 1986).  The Sixth Circuit has held that a defendant's conduct will be treated as culpable only if the defendant displays "either an intent to thwart judicial proceedings or a reckless disregard for the effect of its conduct on those proceedings." Id. at 193.

## II.     The Court should not set aside the Clerk's entries of default.

No good cause exists for the Court to set aside the defaults entered against the

6

Defendants.  Defendants have offered no good reason nor any evidence in support for setting aside the defaults.  Rather, Defendants have willfully defaulted by displaying, at minimum, a reckless disregard for this judicial proceeding.  Although that factor alone is enough for this Court to deny Defendants' Motion, it is also clear that Defendants have no meritorious defenses in this matter, and Plaintiff would be prejudiced if the defaults are set aside.

**A.    Defendants acted culpably when they failed to respond timely to multiple notices.**

Defendant must show that the Clerk's entry of the defaults did not result from culpable conduct attributable to its own actions.  *Amernational Industries Inc. v. Action-Tungram Inc.*, 925 F.2d 970, 977-978 (6th Cir.1991), cert. denied, 501 U.S. 1233 (1991); *Shepard Claims Serv., Inc. v. William Darrah & Assoc.,* 796 F.2d 190, 194 (6th Cir.1986)).  In defining excusable neglect, the 6th Circuit has held that reckless disregard of the  proceedings renders a defendant's conduct culpable. Id.

Here, Defendants claim mistake or excusable neglect as a basis for setting aside the entry of default.  In their Motion, Defendants claim that they were under the impression that steps had been taken on their behalf to resolve the matter and to extend the responsive pleading deadline, if necessary.  However, Defendants offer no declarations or other evidence to support this position.

7

Further, Defendants assert that they were not served with a copy of the requests for entry of default. However, Plaintiff's Counsel served each and every request upon Attorney Benson, as required by Fed R. Civ. Proc. 5(b)(1). Since the time of service of the first amended complaint and summons upon each defendant, Plaintiff has agreed to multiple extensions for Defendants to file their answers and has asked on multiple occasions that Mr. Benson either enter his appearance or obtain Michigan counsel to enter an appearance, or otherwise take steps in showing a good faith effort to answer or otherwise plead. Mr. Benson made multiple assertions that steps would be taken, as requested, throughout the months of August and September. However, no appearance was filed, no answer was filed, and Attorney Benson quit responding to Plaintiff's Counsel's calls and emails. Therefore, after providing fair warning, Plaintiff's Counsel filed its Requests for Clerk's Entry of Default.

Plaintiff's Counsel sent each Request and corresponding Entry of Default to Mr. Benson. Further, Plaintiff's Counsel notified Mr. Benson that, pursuant to the rules, all documents were being sent to Mr. Benson and not directly to PDL, Mr. Belstadt and Ms. Pfazler. Additionally, Plaintiff's Counsel asked Mr. Benson to alert her if he at any point was withdrawing from representation of any of the Defendants. To date, Mr. Benson has not notified Plaintiff or his Counsel of any withdrawal. (*Declaration of Plaintiff's Counsel Amanda Longendyke*, attached as Exhibit 3).

8

Defense Counsel's reply message of October 24, 2014 evidences receipt of the prior emails from Plaintiff's Counsel transmitting both the requests for and subsequent entries of default by the Clerk. Therefore, Defendants have been sent notice through their Counsel of Plaintiff's requests for and the Clerk's entries of default as to PDL, Mr. Belstadt and Ms. Pfalzer.

If Defendants would like to assert that Attorney Benson did not provide them notice of Plaintiff's Requests, served properly upon him, they must provide more than baseless, unsupported assertions. See e.g. *Black v. U.S.,* 2014 WL 5847605, *1 (E.D.Mich. 2014) (Rosen, J.). Attorney Benson has asserted that he "specializes in setting aside default judgments" in response to one of the many requests by Plaintiff's Counsel for Mr. Benson to enter an appearance or otherwise show good faith of intention to answer or otherwise plead. (*Declaration of Plaintiff's Counsel Amanda Longendyke*, attached as Exhibit 3.) Defendants' failure to present anything to evidence excusable neglect or mistake in failing to respond timely coupled with Attorney Benson's conduct and clear intention to thwart these proceedings shows, at minimum, a reckless disregard for this judicial proceeding.

### B.    Defendants have failed to establish a meritorious defense.

A defendant must state "a defense good at law" in order to establish a meritorious defense. *INVST Fin. Group, Inc. v. Chem–Nuclear Sys., Inc.*, 815 F.2d

9

391, 398–99 (6th Cir. 1987).  Defendants again fail to meet their burden.  First, Defendants have failed to present in their Motion any potential meritorious defense for Defendant PDL.  Second, for their claimed defenses for the allegations against Mr. Belstadt and Ms. Pfalzer, Defendants have failed to proffer support of any kind; no declaration, no documents, nothing.  Rather, Defendants simply argue that they cannot be held liable. Defendants' "no liability" arguments boil down to factual claims that Mr. Belstadt and Ms. Pfalzer did not personally dial the calls, and that their ownership  and management of PDL and creation of its policies is not enough to hold them liable under the TCPA or FDCPA.  Each of these boilerplate denials are unsupported and fail to address either the factual predicates necessary to avoid liability or the relevant case law which would hold them liable under the claims in this case.  Absent some evidence of their claimed defenses, Defendants' claims here must fail.

Even if the Court is to consider Defendant Belstadt's and Defendant Pfalzer's unsupported, claimed defenses, the defenses asserted are not "good at law".  First, in their Motion, Defendants assert that to establish a claim for violating the TCPA, a plaintiff must allege that the defendant "made a call" using an automatic telephone dialing system ("ATDS").  Courts in this district have held that involvement in creating, implementing, modifying and/or supervising a company's policy or

10

procedure relating to contacting consumers using an ATDS is enough; direct, personal participation is not required.  *Boyer v. Diversified Consultants, Inc. et al*, No. 5:2014cv12339, 2014 WL 6607005 (E.D.Mich 2014) (Corporate officers and employees of corporations may be held liable for their conduct in violation of the TCPA; the automation of the prohibited act does not shield from liability those responsible for the policies or procedures that led to the calls being placed)(citing *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415-16 (D.Md. 2011)(allowing claims of personal liability under the TCPA to proceed); *Baltimore-Washington Tel. Co. v. Hot Leads Co.*, 584 F. Supp. 2d 736, 745 (D.Md. 2008)(holding that individual defendants may be held jointly and severally liable for TCPA damages); *Texas v. Am. Blastfax*, 164 F. Supp. 2d 892, 898 (W.D. Tex. 2001) (holding "an officer may be personally liable under the TCPA if he had direct, personal participation in or personally authorized the conduct found to have violated the statute").  Therefore, Defendants' claims that Mr. Belstadt's and Ms. Pfalzer's ownership, management, and creation of the policies complained of by Plaintiff are not enough to establish liability are not "good al law."

Second, Defendants stipulate that individuals can be subject to individual liability under the FDPCA. Defendants assert, however, that absent something more, alleged ownership or management of PDL alone is not enough to establish personal

11

liability. Defendants fail to note that Plaintiff has already presented "something more"–namely, Plaintiff's allegation that Defendants Belstadt and Pfazler "in their capacity as officers, agents, directors, and/or compliance officers of PDL, created, authorized and/or implemented PDL's telephone policies, procedures and practices, including its pattern and practice of abusive, deceptive, and unfair debt collection practices. (R. 3, ¶ 41). Defendants' involvement in creating the violative policies complained of clearly show that the violations were not unintentional, as claimed by Defendants' in their Motion. Further, Defendants again offer no support for this claimed defense.

In sum, Defendants offer no support whatsoever for their claimed meritorious defenses. This alone is enough to deny them as they have failed to meet their burden. However, even if the Court is to consider the defenses, as presented, they are not "good at law." Further, if Defendants wished to raise these or other defenses, they had every opportunity to do so within the 21-day period allowed for by the Federal Rules for answering or otherwise pleading, as well as within the additional 2 months of time that Plaintiff granted before requesting any default, despite any obligation to do so. Reciting unsupported, alleged "meritorious" legal defenses at this stage in the process while winking out of one eye does not constitute meeting Defendants' burden. Again, Defendants' Motion must be denied.

12

**C.     Plaintiff will suffer prejudice from the setting aside of the defaults.**

Prejudicial delay is that which results in tangible harm such as lost evidence, discovery problems, or the opportunity for fraud or collusion. *Thompson v. American Home Assur. Co.*, 95 F.3d 429 (6th Cir. 1996); *Amernational Industries Inc. v. Action-Tungram Inc.*, 925 F.2d 970, 977 (6th Cir. 1991), cert. denied, 501 U.S. 1233 (1991); *INVST Financial Group, Inc. v. Chem-Nuclear Systems, Inc.,* 815 F.2d 391, 398 (6th Cir.1987).

Here, Defendants' conduct has clearly resulted in prejudicial delay to Plaintiff, thus requiring this Court to deny Defendants' Motion. Plaintiff's lawsuit was commenced in June based upon events occurring since October 2013, more than a year ago, and service of the Defendants took place between July and September. Since that time, Defendants have failed to answer or otherwise plead.

First, in the intervening time since service on Defendants, the statute of limitations on any claims under the FDCPA as to any other responsible parties has long run.  Thus, by sitting on the sidelines of this suit, Defendants have knowingly allowed claims against co-defendants and potential co-defendants to expire.

Second, many cellular phone carriers allow their records to be destroyed after as early as six months following the time of calls.  Mr. Currier's cellular carrier, Verizon, only retains its cell site records for a period of 1 year. (*Declaration of*

13

*Plaintiff's Counsel Amanda Longendyke*, attached as Exhibit 3.) As such, Defendants'
refusal to participate in this litigation has delayed the commencement of discovery
and caused the destruction of relevant data.

That Plaintiff is strategically, tactically, and actually prejudiced by Defendants'
unwarranted and unexcused delay is patent. Accordingly, because Defendants cannot
meet their burden of showing that Plaintiff will not suffer prejudice from its delay,
this Court must deny Defendants' Motion.

<u>**Conclusion**</u>

Defendants have not met the Sixth Circuit requirements for relief from Clerk's
entry of default under Rule 55(c). Defendants have failed to show good cause,
excusable neglect, or a meritorious defense. In light of the prejudice to Mr. Currier,
the Court should reject the arguments by Defendants and deny the Motion.

Respectfully Submitted,

By:  s/ Amanda Longendyke
Amanda Longendyke (P-77777)
LYNGKLIP & ASSOCIATES
CONSUMER LAW CENTER, PLC
Attorney For Ryan Currier
24500 Northwestern Highway, Ste. 206
Southfield, MI 48075
Phone: (248) 208-8864
amanda@michiganconsumerlaw.com

Dated: December 15, 2014

## Certificate of Service

I hereby certify that on December 15, 2014, I electronically filed this Request, along with all attachments, with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all Counsel of record.  Further, I hereby certify that I also served this documentation on the following:

| Party | Manner Served |
|---|---|
| Michael A. Benson<br>Attorney for Defendants PDL Recovery<br>Group, LLC, Jamie Belstadt and<br>Mara Pfalzer<br>Law Office of Michael A. Benson<br>77 North Buffalo Street<br>P.O. Box 411<br>Springville, New York 14141<br>PH: (716) 592-2900<br>Fax: (716) 592-5170<br>Email: bensonlaw1@verizon.net | Electronically by email to<br>bensonlaw1@verizon.net |

Respectfully Submitted,


By:  s/ Amanda Longendyke
Amanda Longendyke Amanda Longendyke
LYNGKLIP & ASSOCIATES
CONSUMER LAW CENTER, PLC
Attorney For Ryan Currier
24500 Northwestern Highway, Ste. 206
Southfield, MI 48075
(248) 208-8864
Amanda@MichiganConsumerLaw.Com

Dated: December 15, 2014

15