## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

RYAN CURRIER,

                    Plaintiff,

v.

PDL RECOVERY GROUP, LLC,
AVANTE TELADVANCE, INC. d/b/a
CHECK 'N GO ONLINE, MARA
PFALZAR, BENJAMIN J. HOEY,
JAMIE BELSTADT, RONALD COBB,
VERA B. RAY and JOHN AND/OR
JANE DOES 1-20,

                    Defendants.

Case No. 2:14-cv-12179
Honorable Sean F. Cox
Magistrate Paul J. Komives

## DEFENDANT JAMIE BELSTADT'S ANSWER TO PLAINTIFF'S AMENDED COMPLAINT AND AFFIRMATIVE DEFENSES

Defendant Jamie Belstadt ("Defendant"), through its counsel, Olson Law Group, for his Answer to Plaintiff's Amended Complaint and Affirmative Defenses, states as follows:

### Introduction

1.      This action involves the illegal placement of calls by PDL Recovery Group, LLC ("PDL") by and through its agents to the Plaintiff's place of employment and cell phone, without Plaintiff's consent, using an automatic telephone dialing system ("autodialer"), artificial or prerecorded messages, and live calls. Each of the calls placed concerned a debt allegedly owed by Plaintiff,

1

which PDL was attempting to collect on behalf of Avante Teladvance, Inc. d/b/a

Check 'N Go Online ("Check 'N Go Online").

**ANSWER: Denied as untrue.**

2.      In 1991, Congress enacted the Telephone Consumer Protection Act

("TCPA"), 47 U.S.C. § 227, *et seq*., which prohibits calls to a person on his or here

cellular telephone using an autodialer or an artificial or prerecorded message. 47

U.S.C. § 227 (b)(1)(A)(iii).

**ANSWER: Defendant neither admits nor denies the allegations in this
paragraph because the allegations set forth legal conclusions for which no
further response is required. To the extent a response is required, Defendant
neither admits nor denies the remaining allegations in this paragraph for lack
of knowledge or sufficient information to form a reasonable belief as to the
truth of the allegations except to state that the statute speaks for itself.**

3.      Although the collection industry has argued to the contrary, this

prohibition is not limited to telemarketing calls; debt-collection calls are covered.

*Brown v. Hosto & Buchan,* PLLC, 748 F. Supp.2d 847 (W.D. Tenn. 2010);  *In re

Rules & Regulations Implementing Telephone Consumer Protection Act of 1991,

Request of ACA International for Clarification and Declaratory Ruling*, 23

F.C.C.R 559, 561 (2008) ("ACA Declaratory Ruling");  *Brown v. Enterprise

Recovery Systems, Inc.*, No. 02-11-00436-CV, 2013 WL 4506582, *5 (Tex.App.

Aug. 22, 2013).

**ANSWER: Defendant neither admits nor denies the allegations in this
paragraph because the allegations set forth legal conclusions for which no**

**further response is required. To the extent a response is required, Defendant denies the allegations in this paragraph as untrue.**

4.     Further section 217 of the TCPA imposes individual liability for officers as it states: "the act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be also deemed to be the act, omission, or failure of such carrier or user as well as of that person." 47 U.S.C. § 217.

**ANSWER: Defendant neither admits nor denies the allegations in this paragraph because the allegations set forth legal conclusions for which no further response is required. To the extent a response is required, Defendant denies the allegations in this paragraph as untrue.**

5.     Section 1692 of the Fair Debt Collection Practices Act ("FDCPA"), entitled Congressional finding and declaration of purpose, identifies that "there is abundant evidence of the use of abusive, deceptive and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to the invasions of individual privacy." 15 U.S.C.  1692(a).

**ANSWER: Defendant neither admits nor denies the allegations in this paragraph because the allegations set forth legal conclusions for which no further response is required. To the extent a response is required, Defendant neither admits nor denies the remaining allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations except to state that the statute speaks for itself.**

6.     Congress passed this statute, in large part, because the current laws were "inadequate to protect consumers." 15 U.S.C. § 1692(b). Moreover, the purpose of the statute is to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumer against debt collection abuses." 15 U.S.C. § 1692(e).

**ANSWER: Defendant neither admits nor denies the allegations in this paragraph because the allegations set forth legal conclusions for which no further response is required. To the extent a response is required, Defendant neither admits nor denies the remaining allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations except to state that the statute speaks for itself.**

7.     PDL, by and through its agents, used an autodialer, artificial or prerecorded messages and live callers to bombard Mr. Currier with collection calls to his cell phone and place of employement to collect on a bill allegedly owed to Check 'N Go Online. This Complaint is filed on behalf of Mr. Currier for damages to stop Defendants' pattern and practice of placing calls to the place of employment and cell phones of non-debtors and/or individuals who have consented to be contacted in this manner.

**ANSWER: Denied as untrue.**

## Jurisdiction

8.      This Court has jurisidiction under the TCPA, 47 U.S.C. § 227, *et seq.*,

the FDCPA, 15 U.S.C. § 1692k(d), and 28 U.S.C. §§ 1331, 1337.

**ANSWER: Defendant neither admits nor denies the allegations in this paragraph because the allegations set forth legal conclusions for which no further response is required. To the extent a response is required, Defendant neither admits nor denies the remaining allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

9.      This Court may exercise supplemental jurisidiction over the related

state law claims arising out of the same nucleus of operative facts which give rise

to the Federal law claims.

**ANSWER: Defendant neither admits nor denies the allegations in this paragraph because the allegations set forth legal conclusions for which no further response is required. To the extent a response is required, Defendant neither admits nor denies the remaining allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

## Venue

10.      The transaction and occurrences which give rise to this action, namely

the collection calls received by Plaintiff, occurred in Oakland County, Michigan.

**ANSWER: Defendant neither admits nor denies the allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

11.      Venue is proper in the Eastern District of Michigan.

**ANSWER: Defendant neither admits nor denies the allegations in this paragraph because they set forth legal conclusions for which no further response is required. To the extent a response is required, Defendant neither**

**admits nor denies the remaining allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

## Parties

12.    The Plaintiff to this lawsuit is Ryan Currier, a natural person and resident of South Lyon, Michigan 48178.

   **ANSWER: Defendant admits that the Plaintiff to this lawsuit is Ryan Currier. Defendant neither admits nor denies the remaining allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

13.    The Defendants to this lawsuit are as follows:

   a.    PDL Recovery Group, LLC ("PDL"), a foreign company doing business in Michigan, with its principal place of business located in Amherst, New York 14226.

   b.    Avante Teladvance, inc. d/b/a Check 'N Go Online ("Check 'N Go Online"), with its place of incorporation located in Cincinnati, Ohio 45236 and its business taking place online at www.checkngo.com.

   c.    Mara Pfalzer in her capacity as a manager of PDL. Ms. Pfalzer resides in Angola, New York 14006.

   d.    Benjamin J. Hoey in his capacity as a manager of PDL. Mr. Hoey resides in Cheektowaga, New York 14226.

e.   Jamie Belstadt in his capacity as owner and operator of PDL and V, Cobb Associates, LLC ("V, Cobb"). Mr. Belstadt resides in the Buffalo/Niagra, New York area.

f.   Ronald Cobb in his capacity as President of PDL, Mr. Cobb is believed to reside in the Buffalo/Niagra, New York area.

g.   Vera B. Ray in her capacity as a manager of PDL. Ms. Ray resides in the Buffalo/Niagra, New York area.

h.   John and/or Jane Does 1-10, managers of PDL. Plaintiff is informed and believes and on that basis alleges that Defendant Does 1-10 are officers, directors, or managing agents of PDL who are directly responsible for PDL's pattern and practice of abusive, deceptive, and unfair debt collection practices.

i.   John and/or Jane Does 11-20, debt collectors who are employees and potential managing agents of PDL, and who use the following aliases, among possible others, when calling consumers to collect debt: Mr. Joe Kennedy, Mr. Make Hasson, Mr. John Tracty, Mr. Arthur Reid, Mr. Gilbert Ramirez, Mr. William Fields, Mr. Bob Buckles, Mr. David West, Mr. Jeff Drake, Mr. Johnny Lee, Mr. Justin Carlson, Mr. Mike Salerno, Mr. Thomas Cooper, Mr. Tim Cooper, Ms. Michelle Williams,

Ms. Monica Morris, Ms. Cassandra Banks, Ms. Elizabeth

Childs, Ms. Reynolds, and Ms. Schaffer.

**ANSWER: Defendant admits that PDL is a foreign company with its principal place of business located in Amherst, New York 14226. Defendant denies that Defendants Pfalzer, Hoey, Cobb or Ray are officers or managers of PDL. Defendant further denies that Defendant engaged in abusive, deceptive or unfair collection practices. Defendant neither admits nor denies the remaining allegations in this paragraph and its subparts for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

## General Allegations

14. Mr. Currier meets the definition of a "consumer" under 15 U.S.C.

§ 1692a(3).

**ANSWER: Defendant neither admits nor denies the allegations in this paragraph because they set forth legal conclusions for which no further response is required. To the extent a response is required, Defendant neither admits nor denies the remaining allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

15. PDL is a debt buyer and collection company that regularly collects

debts owed to another and, therefore, meets the definition of a "debt collector"

under 15 U.S.C. § 1692a(6).

**ANSWER: Defendant neither admits nor denies the allegations in this paragraph because they set forth legal conclusions for which no further response is required. To the extent a response is required, Defendant neither admits nor denies the allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

16.     Check 'N Go Online provides payday loans and cash advances through its website, www.checkngo.com, and it contracted with PDL to collect its accounts.

**ANSWER: Defendant denies that Check 'N Go Online contracted with Defendant to collect Check N'Go Online's accounts. Defendant neither admits nor denies the remaining allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

17.     Some time prior to October 2013, PDL was engaged by Check 'N Go Online to collect a debt allegedly owed by Mr. Currier.

**ANSWER: Denied as untrue.**

18.     Upon information and belief, Check 'N Go Online has engaged PDL under a written agreement authorizing PDL to collect from Mr. Currier.

**ANSWER: Denied as untrue.**

19.     Check 'N Go Online is responsible for collection calls by its third party collector the same as if it placed the calls itself for actions in violations of the TCPA.

**ANSWER: Defendant neither admits nor denies the allegations in this paragraph because they set forth legal conclusions for which no further response is required. To the extent a response is required, Defendant neither admits nor denies the allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

20.     Mr. Currier maintains a cellular phone via a "cellular telephone service" as described in 47 U.S.C. § 227(b)(1)(A)(iii).

**ANSWER: Defendant neither admits nor denies the allegations in this paragraph because they set forth legal conclusions for which no further response is required. To the extent a response is required, Defendant neither admits nor denies the allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

21.    Mr. Currier maintains his cellular phone for his own personal convenience, to maintain contact with family and friends, and for emergency purposes.

**ANSWER: Defendant neither admits nor denies the allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

22.    Plaintiff is informed and believes and on that basis alleges that PDL, by and through its agents, placed calls to Mr. Currier using an autodialer.

**ANSWER: Defendant neither admits nor denies the allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

23.    PDL's alleged use of an autodialer is supported by a showing of multiple, repeated calls in a short amount of time and the presence of "dead air" at the beginning of many of the calls placed to Plaintiff's cell phone.

**ANSWER: Defendant neither admits nor denies the allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

24.    These evidence that the calls were placed by PDL to Mr. Currier's cell phone using an "automatic telephone dialing system" ("ATDS") as defined by 47 U.S.C. § 227(a)(1).

**ANSWER: Defendant neither admits nor denies the remaining allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

25.     Mr. Currier initially provided his cellular telephone and work numbers to Check 'N Go Online, but after receiving harassing calls from PDL Mr. Currier withdrew his consent to be contacted on those numbers and repeatedly demanded that PDL stop calling him, as described below.

**ANSWER: Defendant neither admits nor denies the allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

26.     Each of the calls at issue in this Complaint occurred within the preceding four years.

**ANSWER: Defendant neither admits nor denies the allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

27.     The calls from Defendants have caused numerous interruptions and disruptions of Mr. Currier's work, social engagements, and recreation.

**ANSWER: Denied as untrue.**

**Specific Allegations Related to PDL, Its Associated Companies, and**

**Management**

28.     Mr. Currier incorporates the preceding allegations by reference.

**ANSWER: Defendant incorporates its prior responses as if fully set forth in this paragraph.**

29.     PDL operates in conjunction with several associated entities out of the same addresses and using the same management and personnel.

**ANSWER: Defendant neither admits nor denies the allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

30.     PDL uses this interlocking, corporate structure to fraudulently conceal the identities of the entities and individuals involved with the companies.

**ANSWER: Denied as untrue.**

31.     PDL accepts service of process at PO Box 783, Amherst, New York 14226.

**ANSWER: Defendant admits that PDL receives mail at PO Box 783, Amherst, New York. Defendant neither admits nor denies the remaining allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

32.     PDL shares this PO Box with V, Cobb. Both of these entities receive mail at this post office box.

**ANSWER: Defendant admits that PDL and V, Cobb receive mail at PO Box 783, Amherst, New York. Defendant neither admits nor denies the remaining allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

33.     Other than this PO Box, PDL and its agents refuse to provide consumers with a mailing address or physical address where the company can be contacted.

**ANSWER: Denied as untrue.**

34.    PDL also often refuses to sent written validation of debts or notice of collection, further bringing its status as a legitimate, law-abiding debt collection company into question.

**ANSWER: Denied as untrue.**

35.    Mara Pfalzer, a manager of PDL and V, Cobb, purchased and signed for the PO Box used by both PDL and V, Cobb.

**ANSWER: Defendant admits that Pfalzar completed the paperwork to obtain the PO Box at issue.  Defendant denies the remaining allegations as untrue.**

36.    Ms. Pfalzer also executed a Biennial Statement on behalf of PDL, as well as on behalf of V, Cobb, to the State of New York.

**ANSWER: Defendant neither admits nor denies the allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

37.    Benjamin Hoey is authorized filer of PDL's Articles of Organization as well as V, Cobb's Articles of Organization with the State of New York.

**ANSWER: Defendant admits that Mr. Hoey, a licensed attorney, filed the aformentioned Articles of Organization on behalf of PDL and V, Cobb.**

38.    Jamie Belstadt – a former debt collector with National Action Financial Services – operates and manages both PDL and V, Cobb.

**ANSWER: Defendant admits that Defendant was previously employed by National Action Financial Services. Defendant neither admits nor denies the remaining allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

39.     Ronald Cobb in named as President of PDL on a settlement letter he executed and sent to Mr. Currier on May 22, 2014. Mr. Cobb is also believed to have connections with V, Cobb as the debt collection company shares his name.

**ANSWER: Defendant admits that "Ronald Cobb" appears on correspondence mailed by PDL but denies that Ronald Cobb is a natural person. Defendant neither admits nor denies the remaining allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

40.     Vera B. Ray is a manager of PDL and has executed corporate documents on behalf of PDL to the State of New York.

**ANSWER: Denied as untrue.**

41.     Mara Pfalzer, Benjamin J. Hoey, Jamie Belstadt, Ronald Cobb, Vera B. Ray and Does 1-20 in their capacity as officers, agents, directors, and/or compliance officers of PDL created, authorized and/or implemented PDL's telephone policies, procedures and practices, including its pattern and practice of abusive, deceptive and unfair debt collection practices.

**ANSWER: Denied as untrue.**

42.     PDL has been known to make unauthorized debt collection calls to the places of employment and cell phones of consumers from six separate numbers, two of which it also lists as contact numbers on its website, www.pdlrecovery.com.

**ANSWER: Denied as untrue.**

43.     PDL has been the target of numerous complaints concerning its

pattern and practice of abusive, deceptive, and unfair debt collection practices.

**ANSWER: Denied as untrue.**

44.     PDL has received an "F" rating on the Better Business Bureau

("BBB") website due to 127 complaints filed against it, 120 of those related to

billing/collection issues (BBB Website, Business Review of PDL Recovery,

http://www.bbb.org/upstate-new-york/business-reviews/collection-agencies/pdl-

recovery-in-amherst-ny-235964678, downloaded April 29, 2014).

**ANSWER: Defendant neither admits nor denies the allegations in this
paragraph for lack of knowledge or sufficient information to form a
reasonable belief as to the truth of the allegations.**

45.     PDL has received a total of 16 consumer complaints since February

15, 2013 on scambook.com relating to its abusive and deceptive collection

practices (scambook.com website, PDL Recovery Services Reviews,

http://scambook.com/company/view/111019/PDL-Recovery-Services, downloaded

February 11, 2014.

**ANSWER: Defendant neither admits nor denies the allegations in this
paragraph for lack of knowledge or sufficient information to form a
reasonable belief as to the truth of the allegations.**

46.     PDL has also received a number of complaints regarding its pattern

and practice of calling consumers' places of employment from a known-PDL

number, on whocallsme.com (WhoCallsMe Website, Complaints on 800-290-

1065, http://whocallsme.com/Phone-Number.aspx/8002901065, downloaded

February 11, 2014) and everycall.us (EveryCall Website, 1-800-290-1065 Phone

Number Reports, http://www.everycall.us/phone-number/1-800-290-1065,

downloaded February 11, 2014).

**ANSWER: Defendant neither admits nor denies the allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

### Specific Allegations Related to Collections Against Mr. Currier

47.    Mr Currier incorporates the preceding allegations by reference.

**ANSWER: Defendant incorporates its prior responses as if fully set forth in this paragraph.**

48.    On or about October 2013, PDL communicated with Mr. Currier for the first time by placing a call to his cell phone.

**ANSWER: Defendant neither admits nor denies the allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

49.    The caller identified himself as Joe Kennedy, a PDL employee. Mr. Kennedy said that he was calling on behalf of PDL about a Check 'N Go debt that PDL was attempting to collect.

**ANSWER: Defendant neither admits nor denies the allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

50.    During this call, Mr. Currier provided his debit card number and set-up a payment plan under which PDL would withdraw $50 from Mr. Currier's account once a month until and ONLY until, December 16th, 2013, at which time Mr. Currier and Mr. Kennedy or another PDL agent would discuss any further potential payments.

**ANSWER: Defendant neither admits nor denies the allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

51.    PDL did not provide Mr. Currier with the notice required by 15 U.S.C. § 1692g or M.C.L. § 339.918 within five days of that first communication.

**ANSWER: Defendant neither admits nor denies the allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

52.    Since initial contact made on or about October 2013, PDL and its agents have contacted Mr. Currier on his cell phone approximately 15 more times, even after he has requested PDL to stop calling him.

**ANSWER: Defendant neither admits nor denies the allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

53.    Upon information and belief, PDL has used an automated telephone dialing system to initiate those calls, after Mr. Currier informed PDL to cease calling him.

**ANSWER: Defendant neither admits nor denies the allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

54.     PDL has also called Mr. Currier's place of employment as many as three times a day and at least a total of six times after Mr. Currier advised PDL not to call his place of employment.

**ANSWER: Defendant neither admits nor denies the allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

55.     PDL made its first call to Mr. Currier's place of employment on October 1, 2013. During this initial call, Mr. Currier told PDL not to call his work again.

**ANSWER: Defendant neither admits nor denies the allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

56.     Despite this request, PDL again called Mr. Currier's place of employment on December 4, 2013, three times on January 30, 2014, and again on February 6, 2014.

**ANSWER: Defendant neither admits nor denies the allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

57.     The purpose of the calls to Mr. Currier – after Mr. Currier requested that PDL cease communication – was to harass and annoy Mr. Currier into making further payments.

**ANSWER: Defendant neither admits nor denies the allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

58.     In an effort to stop the incessant phone calls from PDL, Mr. Currier

authorized a total of five $50 payments [10/112013 $50 debit card payment;

10/25/2013 $50 debit card payment; 11/08/2013 $50 debit card payment;

11/22/2013 $50 debit card payment; 12/20/2013 $50 debit card payment] to be

withdrawn from his bank account.

**ANSWER: Defendant neither admits nor denies the allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

59.     Mr. Currier and PDL agreed that after these payments they would talk

in December 2013 about future payment options.

**ANSWER: Defendant neither admits nor denies the allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

60.     However, future payment was never discussed or agreed upon and

instead PDL made two unauthorized withdrawals from Mr. Currier's account

[01/06/2014 unauthorized $50 debit withdrawal; 01/21/2014 unauthorized $50

debit card withdrawal].

**ANSWER: Defendant neither admits nor denies the allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

61.     After PDL began making unauthorized withdrawals, Mr. Currier

closed his debit account and ceased making payments.

**ANSWER: Defendant neither admits nor denies the allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

62.     On January 30, 2014, an agent of PDL, who identified himself as Joe

Kennedy, called Mr. Currier's place of employment and spoke to his boss, Mr.

Jason Fetig.

**ANSWER: Defendant neither admits nor denies the allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

63.     In that call, Mr. Kennedy disclosed that he was collect a debt from

Mr. Currier.

**ANSWER: Defendant neither admits nor denies the allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

64.     When Mr. Kennedy said that he was calling Mr. Currier in an attempt

to collect a debt, Mr. Fetig informed Mr. Kennedy that his employees were not to

receive personal calls at work.

**ANSWER: Defendant neither admits nor denies the allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

65.     Although he was hesitant, Mr. Fetig connected Mr. Kennedy's call to Mr. Currier. After speaking for a few minutes, and after Mr. Currier refused to discuss payments, Mr. Kennedy hung up.

**ANSWER: Defendant neither admits nor denies the allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

66.     Just a few moments later Mr. Kennedy called Mr. Currier's place of employment again, at which time Mr. Currier answered.

**ANSWER: Defendant neither admits nor denies the allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

67.     Mr. Kennedy then demanded, "Let me speak to your boss," at which time Mr. Currier told Mr. Kennedy that he would call him after work and would not discuss any payments while at his place of employment, and then he hung up.

**ANSWER: Defendant neither admits nor denies the allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

68.     Mr. Kennedy called Mr. Currier's place of employment for a third time on January 30, 2014 and Mr. Currier's boss, Mr. Fetig answered. Mr. Kennedy told Mr. Fetig that he did not like the way his phone calls were handled and said that he would be reporting Mr. Fetig's company to the Better Business Bureau as a result of Mr. Currier's conduct.

**ANSWER: Defendant neither admits nor denies the allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

69.     The purpose of these communications to Mr. Currier's employer was to harass, shame and intimidate Mr. Currier into payment of the debt.

**ANSWER: Defendant neither admits nor denies the allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

70.     On February 6, 2014 at 10:30 a.m., an agent of PDL, who identified himself as Mike Hasson, called Mr. Currier's place of employment and yet again spoke to his boss, Mr. Fetig, about the debt that PDL was attempting to collect.

**ANSWER: Defendant neither admits nor denies the allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

71.     On February 6, 2014, Mr. Currier called PDL to demand that they stop making calls to his place of employment.

**ANSWER: Defendant neither admits nor denies the allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

72.     During this call, Mr. Currier spoke to a PDL employee that identified himself as Mr. Joe Kennedy, and Mr. Currier told Mr. Kennedy that PDL had called his boss last week and again earlier that day.

**ANSWER: Defendant neither admits nor denies the allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

73.    Mr. Currier then demanded, as he had done many times before, that

PDL not call his work again.

**ANSWER: Defendant neither admits nor denies the allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

74.    Mr. Kennedy told Mr. Currier that PDL employees were only calling

his work because he stopped making payments, and that if he wanted the calls to

stop all he had to do was start making payments again.

**ANSWER: Defendant neither admits nor denies the allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

75.    Mr. Currier responded: "So that gives you the right to call my work

after I asked you not to, when you clearly could call my cell phone, leave a

message and just wait?"

**ANSWER: Defendant neither admits nor denies the allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

76.    Mr. Kennedy responded by telling Mr. Currier that if he began

making payments again, even if they needed to lower payments, then he would

remove his work number from his file.

**ANSWER: Defendant neither admits nor denies the allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

77.     Mr. Kennedy also told Mr. Currier that the way PDL operates is to use any numbers given on the original loan application, and Mr. Currier should not have put his work number on the original Check 'N Go loan application if he did not want calls placed there.

**ANSWER: Defendant neither admits nor denies the allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

78.     At the end of this call, Mr. Kennedy agreed that he "probably should have" removed Mr. Currier's work number from his file when Mr. Currier originally requested, and Mr. Kennedy assured Mr. Currier that no more calls would be made to his place of employment.

**ANSWER: Defendant neither admits nor denies the allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

79.     On February 10, 2014, a PDL employee who identified himself as Mr. Mike Hasson called Mr. Currier's place of employment.

**ANSWER: Defendant neither admits nor denies the allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

80.     During this call, Mr. Hasson disclosed to Mr. Currier's boss that PDL was collecting a debt from Mr. Currier.

**ANSWER: Defendant neither admits nor denies the allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

81.    This call took place after Mr. Currier told PDL numerous times to stop making calls to his work, after Mr. Joe Kennedy assured Mr. Currier on February 6, 2014 that no more calls would be made to his place of employment.

**ANSWER: Defendant neither admits nor denies the allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

82.    On February 10, 2014, Mr. Currier again called PDL and spoke with an employee, who identified himself as Mr. Joe Kennedy, about the calls made to his place of employment.

**ANSWER: Defendant neither admits nor denies the allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

83.    During the call, Mr. Currier said, "I want to make it clear not to contact me at all again", "I don't want any phone calls from PDL Recovery again", and "I am asking you not to contact me by phone again."

**ANSWER: Defendant neither admits nor denies the allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

84.    Mr. Currier requested that PDL make any further communications by mail instead of by phone.

**ANSWER: Defendant neither admits nor denies the allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

85.     In response to these requests, Mr. Kennedy stated: "That's not gonna happen, your debt is legally retained in my office", and "If that's how you want to go about it, I'll put the removed number right back on your file, you can file a complaint with whoever you like and we'll go from there."

**ANSWER: Defendant neither admits nor denies the allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

86.     Once Mr. Currier told Mr. Kennedy that PDL should only contact him by mail, Mr. Kennedy placed him on hold during which time multiple recordings referencing a criminal processing company played.

**ANSWER: Defendant neither admits nor denies the allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

87.     While Mr. Currier was on hold, PDL placed yet another unauthorized call to Mr. Currier's place of employment.

**ANSWER: Defendant neither admits nor denies the allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

88.     Mr. Currier hung up and called back, at which time the following conversation took place:

    a.  "Calling my work?" – Mr. Currier;

    b.  "Unfortunately you supplied the number on the original loan

        application. Do you not recall when went online on the two

        separate dates and applied for the loans?" – Mr. Kennedy;

    c.  "I recall that. Do you recall me asking you like five times not to

        call there?" – Mr. Currier;

    d.  "Next time you apply for a loan don't put down the place of

        employment number Ryan." – Mr. Kennedy;

    e.  Then, Mr. Kennedy hung up.

      **ANSWER: Defendant neither admits nor denies the allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

    89.    On February 11, 2014, Mr. Currier was forced to take a personal day from work to deal with the aftermath of the harassing phone calls placed by PDL to his cell phone and place of employment.

      **ANSWER: Defendant neither admits nor denies the allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

    90.    On February 12, 2014 at 1:03 p.m., PDL agent Mike Hasson placed another call to Mr. Currier's cell phone while he was still at work.

      **ANSWER: Defendant neither admits nor denies the allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

91.     In an attempt to prevent PDL from calling his place of employment again, Mr. Currier assured Mr. Hasson that he would call him back after he left work that day.

**ANSWER: Defendant neither admits nor denies the allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

92.     On February 12, 2014 at 5:36 p.m., Mr. Currier called PDL, and he was greeted by a recording referencing that if a caller had been served with a court summons in regard to a lawsuit or other matter pending in the office, they should have all documents ready and ask to speak with someone in the legal outsourcing department.

**ANSWER: Defendant neither admits nor denies the allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

93.     Then, a woman who referred to herself as Stacy answered and transferred Mr. Currier's call to a PDL employee who referred to himself as Mr. Mike Hasson.

**ANSWER: Defendant neither admits nor denies the allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

94.     Mr. Currier asked for PDL's physical address multiple times during this call, and each time Mr. Hasson said he could only provide the PO Box mailing address.

**ANSWER: Defendant neither admits nor denies the allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

95.    Mr. Currier then provided Mr. Hasson with his current address and

told him that PDL was only to contact him via mail.

**ANSWER: Defendant neither admits nor denies the allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

96.    Mr. Hasson said that he would send a letter to Mr. Currier, which he

should receive within 2-3 days, and then PDL would follow-up with him a few

days after that.

**ANSWER: Defendant neither admits nor denies the allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

97.    As he had done multiple times, Mr. Currier stated that PDL was not to

call him again.

**ANSWER: Defendant neither admits nor denies the allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

98.    Near the end of the call Mr. Currier stated, "So we're clear. You're

not going to call me again", to which Mr. Hasson replied, "I will in a couple days."

**ANSWER: Defendant neither admits nor denies the allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

99.    Mr. Currier then stated "I don't authorize it", and later, "I don't want you to contact me," to which Mr. Hasson responded, "You don't want us to contact YOU [emphasis]? Okay."

**ANSWER: Defendant neither admits nor denies the allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

100.    Mr. Currier replied, "At all. I don't want you to contact my work, I don't want you to contact my wife – ", and before he could finish Mr. Hasson hung up and ended the call.

**ANSWER: Defendant neither admits nor denies the allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

101.    On the afternoon of May 21, 2014, PDL agent Mike Hasson placed a call to Mr. Currier's cell phone while he was still at work.

**ANSWER: Defendant neither admits nor denies the allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

102.    In an attempt to prevent Mr. Hasson or another PDL agent from calling his place of employment yet again, Mr. Currier told Mr. Hasson that PDL could call him back after 4 p.m. that day, but again expressed he could not talk while he was at work, and then hung up.

**ANSWER: Defendant neither admits nor denies the allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

103.   On May 29, 2014 at 9:41 a.m., Mr. Currier received a pre-recorded call from PDL.

**ANSWER: Defendant neither admits nor denies the allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

104.   Upon answering this call, Mr. Currier was met with a pre-recorded voice that said RYAN CURRIER must contact PDL immediately.

**ANSWER: Defendant neither admits nor denies the allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

105.   Since February 12, 2014, Mr. Currier has received approximately five pre-recorded calls to his cell phone from PDL, in addition to the live calls received.

**ANSWER: Defendant neither admits nor denies the allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

106.   Upon answering these calls, Mr. Currier always heard the same message, each always recited by the same pre-recorded human voice except for the words "Ryan Currier", which were spoken by an artificial, machine-operated voice.

**ANSWER: Defendant neither admits nor denies the allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

107.   On May 29, 2014, Mr. Currier received a proposed settlement letter from PDL, executed by "Ronald Cobb, President."

**ANSWER: Defendant neither admits nor denies the allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

108.   This letter stated that, per prior discussion between PDL agents and Mr. Currier, there was an offer to settle the debt, in full, for $977.90 if Mr. Currier submitted payment by May 31, 2014.

**ANSWER: Defendant neither admits nor denies the allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

109.   Mr. Currier had no such discussion regarding settlement with any agent of PDL.

**ANSWER: Defendant neither admits nor denies the allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

110.   As a result of the acts alleged above, Plaintiff has suffered damages.

**ANSWER: Defendant neither admits nor denies the allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

<u>**COUNT I – Telephone Consumer Protection Act (All Defendants)**</u>

111.   Mr. Currier incorporates the preceding allegations by reference.

**ANSWER: Defendant incorporates its prior responses as if fully set forth in this paragraph.**

112.   At all times material and relevant hereto, PDL controlled and/or operated "automatic telephone dialing systems" as defined by the TCPA 47 U.S.C. § 227(a)(1) and 47 C.F.R. 64.1200(f)(1).

**ANSWER: Defendant neither admits nor denies the allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

113.   As more particularly described above, PDL placed non-emergency telephone calls to Mr. Currier's cellular telephone using an automatic telephone dialing system or pre-recorded or artificial voice without the prior express consent of Mr. Currier, in violation of 47 U.S.C. § 227(b)(1)(A)(iii).

**ANSWER: Defendant neither admits nor denies the allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

114.   Check 'N Go Online is responsible for collection calls by its third party collector, PDL, the same as if it placed the calls itself for actions in violation of the TCPA.

**ANSWER: Defendant neither admits nor denies the allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

115.   The officers of PDL, including Mara Pfalzer, Benjamin J. Hoey, Jamie Belstadt, Ronald Cobb, Vera B. Ray and Defendant Does 1-20 are each personally liable for each violation of the TCPA as they are officers and agents who created, authorized and/or implemented the telephone policies, procedures and practices which resulted in the violations of the TCPA set forth herein. 47 U.S.C. § 217.

**ANSWER: Denied as untrue.**

116.   Defendants negligently violated the TCPA, 47 U.S.C. § 227 et seq. in relation to Mr. Currier.

**ANSWER: Denied as untrue.**

117.   As a result of Defendant's negligent violations of the TCPA, Mr. Currier may recover statutory damages of $500.00 for each and every call in violation of the statute over the last four years.

**ANSWER: Denied as untrue.**

118.   Alternatively, Defendants have knowingly and willfully violated the TCPA in relation to Mr. Currier.

**ANSWER: Denied as untrue.**

119.   As a result of Defendants' willful violations of the TCPA, Mr. Currier may recovery treble and statutory damages ($1,500.00) for each and every call in violation of the statute over the last four years.

**ANSWER: Denied as untrue.**

### COUNT II – Fair Debt Collection Practices Act
### (All Defendants With the Exclusion of Check 'N Go Online)

120.   Mr. Currier incorporates the preceding allegations by reference.

**ANSWER: Defendant incorporates its prior responses as if fully set forth in this paragraph.**

121.   At all relevant times and in the ordinary course of business Defendants, with the exclusion of Check 'N Go Online, regularly engaged in the practice of collecting debts on behalf of other individuals or entities.

**ANSWER: Denied as untrue.**

122.   Defendants, with the exclusion of Check 'N Go Online, are "debt collectors" as defined under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692a(6).

**ANSWER: Defendant neither admits nor denies the allegations in this paragraph because they set forth legal conclusions for which no further response is required. To the extent a response is required, Defendant denies the allegations in this paragraph as untrue.**

123.   At all times relevant to this complaint, Defendants, with the exclusion of Check 'N Go Online, sought to collect a "consumer" debt from Mr. Currier.

**ANSWER: Denied as untrue.**

124.   Defendants' actions, with the exclusion of those of Check 'N Go Online, to collect this alleged debt from Mr. Currier violated the provisions of the FDCPA including, but not limited to, the following: 15 U.S.C. §§ 1692b(1), 1692b(2), 1692b(3), 1692c(a)(1), 1692c(a)(3), 1692c(b), 1692d(5), 1692d(6), 1692e, 1692f, 1692f(1) and 1692g(A).

**ANSWER: Denied as untrue.**

125.   Mr. Currier has suffered damages as a result of these violations of the FDCPA.

**ANSWER: Denied as untrue.**

### COUNT III – Michigan Collection Practices Act as alternative
### To claims under the Michigan Collection Practices Act (Defendant PDL)

126.   Mr. Currier incorporates the preceding allegations by reference.

**ANSWER: Defendant incorporates its prior responses as if fully set forth in this paragraph.**

127.   PDL is a "collection agency" as that term is defined in the Michigan

Occupational Code ("MOC"), M. C. L. § 339.901 (b).

**ANSWER: Defendant neither admits nor denies the allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

128.   Mr. Currier is a "debtor" as that term is defined in M.C.L. §

339.901(f)

**ANSWER: Defendant neither admits nor denies the allegations in this paragraph because they set forth legal conclusions for which no further response is required. To the extent a response is required, Defendant neither admits nor denies the remaining allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

129.   PDL's foregoing acts in attempting to collect this alleged debt against

Mr. Currier constitute violations of the MOC including, but not limited to, the

following: M.C.L. §§ 339.915(a), 339.915(e), 339.915(g), 339.915(i), 339.915(n),

339.915(q), and 339.918(1).

**ANSWER: Denied as untrue.**

130.   Mr. Currier has suffered damages as a result of these violations of the MOC.

**ANSWER: Denied as untrue.**

131.   These violations of the MOC were willful.

**ANSWER: Denied as untrue.**

**COUNT IV [sic COUNT III] – Michigan Collection Practices Act as alternative to claims under the Michigan Occupational Code.**

132.   Mr. Currier incorporates the preceding allegations by reference.

**ANSWER: Defendant incorporates its prior responses as if fully set forth in this paragraph.**

133.   PDL is a "regulated person" under the Michigan Collection Practices Act ("MCPA"), M.C.L. § 445.251(g).

**ANSWER: Defendant neither admits nor denies the allegations in this paragraph because they set forth legal conclusions for which no further response is required. To the extent a response is required, Defendant neither admits nor denies the remaining allegations in this paragraph for lack of knowledge or sufficient information to form a reasonable belief as to the truth of the allegations.**

134.   PDL's foregoing acts in attempting to collect this alleged debt against Mr. Currier constitute violations of the MCPA, including, but not limited to, the following: M.C.L. §§445.252(e), 445.252(g), 445.252(i), 445.252(n), and § 445.252(q).

**ANSWER: Denied as untrue.**

135.   Mr. Currier has suffered damages as a result of these violations of the MCPA.

**ANSWER: Denied as untrue.**

136.   These violations of the MCPA were willful.

**ANSWER: Denied as untrue.**

WHEREFORE, Defendant, Jamie Belstadt, requests that this Court: (a) dismiss Plaintiff's Complaint with prejudice and enter judgment in favor of Defendant; (b) award Defendant its fees and costs incurred in this matter; and (c) grant such other and further relief as is just and proper.

Respectfully submitted,

/s/ Charity A. Olson
Charity A. Olson (P68295)
OLSON LAW GROUP
2723 S. State St., Suite 150
Ann Arbor, MI 48104
T: (734) 222-5179
F: (866) 941-8712
Dated: January 30, 2015      colson@olsonlawpc.com

## AFFIRMATIVE DEFENSES

1.   Any allegations not specifically admitted in Defendant's Answer are denied.

2.   Defendant alleges, upon information and belief, that one or all of the claims in this action are subject to a binding and enforceable agreement to arbitrate.

3.     Plaintiff's claims are precluded, in whole or in part, by the applicable statute of limitations.

4.     This Court lacks personal jurisdiction over Defendant. Specifically, Defendant did not directly or indirectly engage in any activity that caused damages to Plaintiff. Furthermore, the exercise of jurisdiction over Defendant violates due process.

5.     Plaintiff's claims are precluded, in whole or in part, because one or more of the calls at issue were not made using an "automatic telephone dialing system" as that term is defined in the TCPA.

6.      Plaintiff's claims are barred, in whole or in part, because Defendant PDL had prior express consent to contact Plaintiff regarding the debt at issue.

7.     Plaintiff's claims are precluded, in whole or in part, because any harm suffered by Plaintiff was legally and proximately caused by persons or entities over which Defendant exercised no control or authority.

8.      Plaintiff's claims may be precluded, in whole or part, because Plaintiff's damages, if any, were legally and proximately caused by Plaintiff's own acts and/or omissions.

9.     Plaintiff's claims may be precluded, in whole or in part, by Plaintiff's failure to mitigate Plaintiff's damages, if any.

10.    To the extent Defendant's conduct violated the law, such conduct was neither willful nor malicious.

11.    Plaintiff's claims are precluded, in whole or in part, based on the doctrines of estoppel, waiver, consent, laches and/or unclean hands.

Respectfully submitted,

/s/ Charity A. Olson
Charity A. Olson (P68295)
OLSON LAW GROUP
2723 S. State St., Suite 150
Ann Arbor, MI 48104
T: (734) 222-5179
F: (866) 941-8712
colson@olsonlawpc.com

Dated: January 30, 2015

## Proof of Service

I, Charity A. Olson, hereby state that on January 30, 2014, I electronically filed Defendant's Answer and Affirmative Defenses with the Clerk of the Court using the ECF system, which will send notification of such filing to all attorneys of record.

/s/ Charity A. Olson
Charity A. Olson (P68295)
OLSON LAW GROUP