UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Ryan Currier

      Plaintiff,

                                        Case No. 14-12179

v.                                        Hon. Sean F. Cox

PDL Recovery Group, LLC, et. al.,

      Defendants.

_____/

**OPINION & ORDER GRANTING IN PART AND DENYING IN PART**
**PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT**

This action is brought pursuant to the Telephone Consumer Protection Act ("TCPA"), the

Fair Debt Collection Practices Act ("FDCPA"), the Michigan Occupational Code ("MOC"), and

the Michigan Collection Practices Act ("MCPA").

Currently before the Court is Plaintiff's partial motion for summary judgment. Plaintiff's

motion seeks summary judgment as to liability and statutory damages on his TCPA, FDCPA and

MOC claims. Plaintiff does not intend to forfeit claims omitted from the instant motion.

In his motion, Plaintiff asserts that Defendants PDL Recovery Group, V Cobb Associates

and Jamie Belstadt violated the TCPA. Plaintiff further asserts that Defendants PDL Recovery

Group, V Cobb Associates, Jamie Belstadt, and Mara Pfalzer violated certain provisions of the

FDCPA. And finally, Plaintiff asserts that Defendants PDL Recovery Group, V Cobb

Associates and Jamie Belstadt violated certain provisions of the MOC.

Defendants PDL Recovery Group and Jamie Belstadt have filed a response opposing

Plaintiff's motion. Defendant Mara Pfalzer, appearing *pro se*, was ordered to file a response to

1

the motion after the deadline to do so had passed.  Pfalzer's one-page response was filed on

November 28, 2016.   Defendant V Cobb Associates has not appeared in this matter and has

therefore failed to file any response to the instant motion.[1]

The Court finds that oral argument would not significantly aid in the decisional process

and therefore orders that the instant motion will be decided upon the briefs.  *See* E.D. Mich. LR

7.1(f).  Plaintiff's motion shall be **GRANTED IN PART AND DENIED IN PART**, as follows:

- the Court shall GRANT summary judgment as to Count I on the issue of liability and statutory damages against Defendant PDL Recovery and Defendant Belstadt for willful violations of § 227(b)(1)(A)(iii) of the TCPA;

- the Court shall GRANT summary judgment on the issue of liability and statutory damages against Defendants PDL and Belstadt for violations of § 1692c(a)(1) and § 1692c(a)(3) of the FDCPA;

- the Court shall GRANT summary judgment on the issue of liability and statutory damages against Defendants PDL, Belstadt and Pfalzer for violations of § 339.918 of the MOC;

- the Court shall DENY summary judgment against Defendants PDL, Belstadt and Pfalzer as to § 1692g of the FDCPA because a material dispute of fact exists as to whether such a claim is timely;

- the Court shall DENY summary judgment against Defendants PDL and Belstadt as to § 1692c(b) and § 1692d of the FDCPA and as to § 339.915(I) and § 339.915(n) of the MOC; and

- the Court shall DENY summary judgment against Defendants PDL and Belstadt as to § 339.915(q) of the MOC

---

[1] Based upon Plaintiff's response to this Court's order requiring supplemental briefing, the instant Opinion & Order does not relate to Defendant V, Cobb Associates, LLC. Plaintiff has indicated in his supplemental brief that he intends to submit a request for default as to this defendant in lieu of seeking summary judgment.  (Doc. # 165, Pl.'s Suppl. Br. at 5).

2

# BACKGROUND

## A.      Procedural Background

This action arises out of Plaintiff's failure to pay a loan and Defendants' efforts to collect on the defaulted loan.  The named Defendants in this case are: (1) PDL Recovery Group, LLC ("PDL"); (2) Mara Pfalzer ("Pfalzer"); (3) Jamie Belstadt ("Belstadt"); (4) V, Cobb Associates, LLC ("V Cobb"); (5) John Puglisi ("Puglisi"); and (6) Mike Hasson ("Hasson").

Plaintiff filed this action on June 3, 2014.  (Doc. #1).  Plaintiff's second amended complaint, filed on June 29, 2015, is the operative complaint in this case.  (Doc. #48, Pl.'s Am. Compl.).  Plaintiff alleges the following four counts:

| | |
|---|---|
| Count I | Telephone Consumer Protection Act, violation of 47 U.S.C. § 227(b)(1)(A)(iii) –  against all defendants; |
| Count II | Fair Debt Collection Practices Act, violations of 15 U.S.C. §§ 1692b(1), 1692b(2), 1692b(3), 1692c(a)(1), 1692c(a)(3), 1692c(b), 1692d(5), 1692d(6), 1692e, 1692f, 1692f(1), and 1692g(A) – against all defendants; |
| Count III | Michigan Occupational Code, as alternative to claims under Michigan Collection Practices Act, violations of M.C.L. §§ 339.915(a), 339.915(e), 339.915(g), 339.915(I), 339.915(n), 339.915(q), and 339.918(1) – against Defendants PDL and V, Cobb LLC; |
| Count IV[2] | Michigan Collection Practices Act, as alternative to claims under Michigan Occupational Code, violations of M.C.L. §§ 445.252(e), 445.252(g), 445.252(I), 445.252(n), and 445.252(q). |

(Pl.'s Am. Compl.).  Plaintiff seeks actual damages, statutory damages, treble damages, statutory costs and attorney fees.

On August 10, 2016, Plaintiff filed the instant partial motion for summary judgment.

---

[2] Plaintiff's amended complaint mistakenly labels this Count as "Count III" when it should be labeled Count IV.

(Doc. #142, Pl.'s Br.).  In it, Plaintiff seeks: (1) summary judgment against Defendants PDL, V Cobb and Belstadt as to Count I, for violating § 227(b)(1)(A)(iii) of the TCPA; (2) summary judgment against Defendants PDL, V Cobb and Belstadt as to Count II, for violating §§ 1692g, 1692c(b), 1692c(a)(1), 1692c(a)(3) and 1692d of the FDCPA; (3) summary judgment against Defendant Pfalzer as to Count II, for violating § 1692g of the FDCPA; and (3) summary judgment against Defendants PDL, V Cobb and their managing agent, Belstadt, as to Count III, for violating §§ 339.915(i), 339.915(n), 339.918 and 339.915(q) of the MOC.

Pursuant to this Court's practice guidelines, Plaintiff's motion and supporting brief included a separate Statement of Material Facts Not In Dispute.  (Doc. #144, Pl.'s Stmt.). Defendants PDL and Belstadt have filed a response to Plaintiff's motion, (Doc. #152, Def.s' Resp.), and their supporting brief included a separate Counter-Statement of Disputed Facts. (Doc. #153, Def.s' Stmt.).  Defendant Pfalzer, appearing *pro se*, was ordered to file a response to the motion and has done so.  (Doc. # 162, Pfalzer's Resp.).

On December 15, 2016, the Court filed an Order Requiring Supplemental Briefing. (Doc. # 164).  The Court's Order noted that neither party had adequately stated and supported its positions with sufficient authority.  Plaintiff filed his supplemental brief on December 19, 2016. (Doc. # 165, Pl.'s Suppl. Br.).  Defendants PDL and Belstadt also filed their supplemental brief on December 19, 2016.  (Doc. # 166, Def.s' Suppl. Br.).

The following facts, viewed in a light most favorable to Defendants, are gleaned from the parties' statements and the uncontradicted documentary evidence submitted by the parties.

## B.    Factual Background

Plaintiff resides in South Lyon, Michigan and is employed at American Metal Processing

Co.  (Ex. 2 to Pl.'s Br., Pl.'s Dec. at ¶¶ 3-4).  Plaintiff is the owner of a cellular phone with the phone number ending in the last four digits of 4826.

Defendant PDL is a debt collection company solely owned by Defendant V, Cobb, LLC. (Pl.'s Stmt. at ¶¶ 6-7; Doc. #153, Def.s' Stmt. at ¶¶ 6-7).  Defendant V, Cobb is solely owned by Defendant Belstadt.  (Pl.'s Stmt. at ¶ 7; Def.s' Stmt. at ¶ 7).  V, Cobb conducts no other business apart from ownership of PDL.  (*Id*. at 18-19; Pl.'s Stmt. at ¶¶ 8, 10; Def.s' Stmt. at ¶¶ 8, 10).

Defendant Belstadt is Defendant PDL's highest ranking official.  (Pl.'s Stmt. at ¶ 19; Def.s' Stmt. at ¶ 19).  Defendant Belstadt has ultimate authority over the policies and practices of PDL.  (Pl.'s Stmt. at ¶ 20; Def.s' Stmt. at ¶ 20).

Defendant Pfalzer worked for Defendant PDL from May 2008 through November 2014. (Ex. 6 to Pl.'s Br., Pfalzer Dep. at 16).  Throughout her employment, Defendant Pfalzer's responsibilities included the following: (1) payroll; (2) new hire applications; (3) bank deposits; (4) payment processing; and (5) sending debtor letters.  (*Id*. at 17-18).  Defendant Pfalzer was initially employed as a debt collector and then transitioned into the position of administrative director.  (*Id*. at 40).  As administrative director, she supervised the payment processing of all money that came into PDL, sent debtor letters and reported directly to Defendant Belstadt.  (*Id*.).

Defendant Puglisi was a debt collector working for Defendant PDL at all times relevant to this action.  (Pl.'s Stmt. at ¶ 20; Def.s' Stmt. at ¶ 20).  Defendant Puglisi collected debts under the alias "Joseph Kennedy," and will be referred to as such for purposes of this Opinion & Order.  (Pl.'s Stmt. at ¶ 25; Def.s' Stmt. at ¶ 25).

Defendant Hasson was a debt collector working for PDL at all times relevant to this action.  (Pl.'s Stmt. at ¶ 27; Def.s' Stmt. at ¶ 27).  Defendant Hasson remains employed as a debt

collector by PDL.  (Pl.'s Stmt. at ¶ 28; Def.s' Stmt. at ¶ 28).

In 2012, Plaintiff obtained a loan from "Check 'N Go."  Plaintiff borrowed money from Check 'N Go for "personal purposes."[3]  (Pl.'s Dec. at ¶ 6).  Specifically, Plaintiff testified that he borrowed money in order to pay bills and to pay for reparations to his personal car.  (Ex. 11 to Def.s' Resp., Pl.'s Dep. at 21-22).  After Plaintiff defaulted on payments, the Check 'N Go account was referred to Defendant PDL for collection.  There is no dispute that PDL representatives contacted Plaintiff regarding the Check 'N Go debt.  (Pl.'s Stmt. at ¶ 5; Def.s' Stmt. at ¶ 5).

Plaintiff asserts that PDL representatives have contacted him approximately 32 times in an effort to collect the Check 'N Go debt.  (Pl.'s Dec. at ¶ 14).  Here, PDL pursued its collection efforts in two ways.  PDL employed an automated telephone dialing system to place prerecorded calls to Plaintiff's cellular phone.  (Pl.'s Stmt. at ¶ 37; Def.s' Stmt. at ¶ 37).  The service in which PDL subscribes to send these prerecorded messages is provided by Global Connect.  (Pl.'s Stmt. at ¶ 52; Def.s' Stmt. at ¶ 52).  Global Connect obtained the names and phone numbers of debtors when PDL uploaded said information on Global Connect's website.  (Ex. 3 to Pl.'s Reply, Belstadt Dep. at 15).  If the system detected that a call had been answered, Global Connect would play a message that PDL designated to be played.  (Ex. 8 To Pl.'s Br., Global Connect Dep. at 21).  If the system detected that it had reached a machine, PDL directed a different message to be played.  (*Id.*).  PDL's debt collectors also attempted to contact Plaintiff directly on his cellular phone or on his work land line.  (Pl.'s Stmt. at ¶ 38; Def.s' Stmt. at ¶ 38;

---

[3] Defendants deny that Plaintiff borrowed money for personal reasons.  In so doing, Defendants attack the sufficiency of Plaintiff's "conclusory" and "self-serving" affidavit.

Pl.'s Dec. at ¶ 9).

PDL agents are to call all numbers that are provided on a debtor's account, including the debtor's place of employment.  (Pl.'s Stmt. at ¶ 56; Def.s' Stmt. at ¶ 56; Ex. 5 to Pl's Br., Hasson Dep. at 29-30).  Defendant Hasson testified that, when speaking to a debtor's employer, he would typically disclose the fact that he is a debt collector calling on behalf of PDL.  (Hasson Dep. at 30-31).

### 1.      PDL's Collection Efforts As They Relate To The Instant Action

### a.      Initial Contact by Defendant to Plaintiff

The parties dispute the date on which Plaintiff was first contacted by PDL.  Defendants point to PDL's collection notes, which indicate that Plaintiff was first contacted on March 4, 2013.  Plaintiff claims he was first contacted on September 19, 2013 by PDL representative "Joe Kennedy."  (Pl.'s Dep. at 26; Ex. 12 to Pl.'s Br., Pl.'s Interrogatory Answers at ¶ 1a).  This phone call was made to Plaintiff's place of employment.  (Pl.'s Dep. at 26).  Plaintiff advised that he was not permitted to take phone calls at work and asked to be contacted on his cellular phone at 5 p.m.  (*Id*.; Pl.'s Interrogatory Answers at ¶ 1a).

Kennedy subsequently called Plaintiff's cellular phone at 5 p.m.  (*Id*.).  During this conversation, Kennedy introduced himself and stated that he was calling from PDL regarding the Check 'N Go debt.  (*Id*.).  Plaintiff agreed that he owed the Check 'N Go debt.  (*Id*. at 27).  Plaintiff also agreed to repay the debt and authorized five $50.00 electronic withdrawals from his debit card account occurring on the following dates: October 11, 2013; October 25, 2013;

7

November 8, 2013; November 22, 2013 and December 20, 2013.[4]  (Pl.'s Stmt. at ¶ 47; Def.s'

Stmt. at ¶ 47).

Plaintiff claims that he never received written notice from PDL after his initial

communication with PDL agent Kennedy.  (Pl.'s Dec. at ¶ 15).  Defendants dispute this.

Defendant Belstadt testified that PDL's system generates an initial notice/letter whenever a

debtor account is first loaded into PDL's database.  (Ex. 5 to Def.s' Resp., Belstadt Dep. at 95-

96).  Belstadt further testified that a letter would have been sent to Plaintiff on October 26, 2012

when Plaintiff's account was first placed with PDL.  (*Id.* at 96).  Belstadt acknowledged,

however, that PDL's collection notes fail to indicate whether an initial letter was actually sent to

Plaintiff.[5]  (*Id.*).

###     b.    **Phone Calls Made To Plaintiff**

The following is an overview of the phone calls taking place after Plaintiff agreed to

repay the Check 'N Go debt.  On December 4, 2013, Plaintiff called PDL and communicated for

a second time that he was not permitted to receive phone calls at work.  (Pl.'s Interrogatory

Answers at ¶ 1b).

On January 30, 2014, Joe Kennedy attempted to contact Plaintiff by telephone at work.

(*Id.* at ¶ 1c).  Kennedy spoke to Jason Fettig, Plaintiff's supervisor, and threatened to report

---

[4] Plaintiff did not consent to any additional payments.  (Pl.'s Stmt. at ¶ 48; Pl.'s Dec. at ¶¶ 11-12).  Despite this, PDL initiated two $50.00 withdrawals from Plaintiff's debit card account on January 6, 2014 and January 21, 2014.  (Pl.'s Stmt. at ¶ 48; Pl.'s Dec. at ¶¶ 11-12).  Plaintiff closed his debit card account as a result of the unauthorized withdrawals.  (Pl.'s Stmt. at ¶ 49; Pl.'s Dec. at ¶ 13).

[5] Defendants are unable to provide a copy of the letter that would have been sent to Plaintiff, but they provide a copy of a generic initial notice letter and a letter that was sent to Plaintiff on May 21, 2014.  (Ex. 2 to Def.s' Resp.).

Plaintiff's place of employment to the Better Business Bureau ("BBB").  (*Id*. at ¶1c; Pl.'s Dep. at 31-32).

On February 6, 2014, Plaintiff received a return call from a PDL agent.  (*Id*. at ¶ 1d).  During this conversation, the agent stated that PDL would remove Plaintiff's work land line from their calling list.  (*Id*.).  On February 10, 2014, PDL contacted Plaintiff at work.  (*Id*. at ¶ 1e).  During this conversation, Plaintiff requested no further contact from PDL all together.  (*Id*.).  PDL's account notes make no mention of Plaintiff's requests that PDL cease all telephonic communications with Plaintiff.

PDL delivered automated, prerecorded messages to Plaintiff's cellular phone 11 times after Plaintiff requested no further contact: March 13, 2014; March 18, 2014; April 22, 2014; May 5, 2014; May 29, 2014; June 4, 2014; June 10, 2014; June 17, 2014; June 24, 2014; July 1, 2014; and July 8, 2014.[6]  (Pl.'s Dec. at ¶ 9a; Ex. 8 to Pl.'s Br. at 20-22; Ex. 11 to Pl.'s Br.).

### c.    Recorded Phone Conversations Between Plaintiff & PDL Agents

Plaintiff personally recorded four phone calls with PDL agents.  (Pl.'s Dec. at ¶ 17).  Plaintiff has provided transcriptions of the phone calls (Pl.'s Stmt. at ¶ 18a-d) and has provided the Court with the audio recordings.  The parties do not appear to dispute the content of the recorded calls.

The first call recorded by Plaintiff is a prerecorded message left for Plaintiff on his cellular phone.  The caller identified herself as "Ms. Watson."  (*Id*. at ¶ 18a).  The caller advised that the message was a required notice in accordance with State and Federal regulations.  (*Id*.).

---

[6] Defendants attack the sufficiency and/or admissibility of the exhibits Plaintiff offers in support of this fact.  The Court finds this argument unpersuasive for reasons addressed later in the this Opinion & Order.

The caller provided a call back number to her department and stated that the call was made in reference to claim number 178381. (*Id.*). Defendant Belstadt testified that he did not know a "Ms. Watson," and that he had never heard that message before. (Ex. 4 to Pl.'s Br., Belstadt Dep. at 103-04). However, Belstadt admitted that the number belonged to PDL. (*Id.* at 104).

In a second recorded call, a message from Defendant Hasson was left for Plaintiff on his cellular phone. Defendant Hasson stated that he was looking to get in touch with Plaintiff regarding the "Check 'N Go declined payment from about a week ago." (Pl.'s Stmt. at ¶ 39; Def.s' Stmt. at ¶ 39). Hasson further stated that he had just spoken to Plaintiff's supervisor, Jason Fettig, and "almost got into words with him trying to leave [Plaintiff] a message over there." (*Id.*). Hasson advised that he was "not trying to jeopardize [Plaintiff's] job at all..." and concluded that he needed Plaintiff to contact him at some point. (*Id.*). At his deposition, Defendant Hasson confirmed that it was his voice on the phone call and that he did in fact leave that message for Plaintiff. (Ex. 5 to Def.s' Resp., Hasson Dep. at 64-65).

In a third recorded call, Plaintiff spoke to PDL agent Joe Kennedy. (Pl.'s Dec. at 18d). Plaintiff stated that he wanted all phone calls from PDL to stop. Kennedy responded that this would not happen because Plaintiff's debt is legally retained in his office. During this conversation, Plaintiff is placed on hold while Kennedy initiates a phone call with Plaintiff's employer. Plaintiff hung up and called again. Plaintiff asked Kennedy why he called his place of employment despite Plaintiff asking that he not call there. Kennedy responded that Plaintiff supplied the number on the original loan application.

In a fourth recorded call, Plaintiff spoke to Defendant Hasson. (Ex. 5 to Pl.'s Br., Hasson Dep. at 50). Plaintiff stated that he had previously asked PDL agent "Joe" to stop calling him.

Plaintiff summarized the problems that he had experienced with PDL representative Joe, which included: (1) Joe repeatedly calling Plaintiff's place of employment without Plaintiff's consent; (2) Joe speaking to Plaintiff's employer, Jason Fettig, and threatening to report him to the Better Business Bureau; and (3) PDL making unauthorized withdrawals from Plaintiff's bank account. (*Id*. at 47-49). Plaintiff advised Defendant Hasson that Plaintiff no longer wanted PDL or its representatives to contact him. Plaintiff made this request at least three times. Plaintiff concluded that PDL could contact him by mail, if need be. (*Id*. at 44-46). Defendant Hasson confirmed Plaintiff's address and advised that a settlement letter would be sent to Plaintiff. (*Id*.). At his deposition, Defendant Hasson confirmed that it was his voice on the phone call.

### 2.      PDL Training/Policies Regarding FDCPA & TCPA

PDL does not maintain an employee manual to help debt collectors comply with the FDCPA or the TCPA. (Ex. 3 to Pl.'s Br., Belstadt Dep. at 95). Nor does PDL use any treatises to assist its debt collectors in complying with the FDCPA and TCPA. (Pl.'s Stmt. at ¶ 68; Def.s' Stmt. at ¶ 68). Instead, all PDL employees are given an FDCPA exam before they are permitted to be on the floor. (Belstadt Dep. at 95). Passing the FDCPA exam is a condition of employment. (*Id*.). If they pass the FDCPA exam, Defendant Belstadt assumes that they are trained. (*Id*. at 95-96).

To ensure compliance with the law, Belstadt testified that PDL will "randomly monitor and audit calls, both incoming and outgoing ... to ensure that collectors are not ... breaking the law." (Ex. 4 to Pl.'s Br. at 34). Floor managers or Belstadt himself would answer any questions debt collectors may have had regarding FDCPA compliance. (*Id*. at 35). Although PDL does not offer training on the FDCPA, Belstadt testified that he would inform employees of any

11

updates in the law on a case-by-case basis.  (*Id*. at 38).  If a debt collector is alleged to have

engaged in misconduct, Belstadt testified that floor managers have been verbally instructed to

make records of such allegations in an employee's file.  (Ex. 3 to Pl.'s Br. at 98).

## STANDARD

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

(1984), quoting Fed. R. Civ. P. 56(c).

The party that moves for summary judgment has the burden of showing that there are no

genuine issues of material fact in the case.  *LaPointe v. United Autoworkers Local 600*, 8 F.3d

376, 378 (6th Cir. 1993).  The moving party may meet its burden by showing that the nonmoving

party lacks evidence to support an essential element of its case.  *Barnhart v. Pickrel, Schaeffer &*

*Ebeling Co*., 12 F.3d 1382, 1389 (6th Cir. 1993).  In response, the nonmoving party must come

forth with more than a "mere scintilla of evidence" in support of his or her position in order to

survive summary judgment.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 251 (1986).  "In

fact, '[t]he failure to present any evidence to counter a well-supported motion for summary

judgment alone is grounds for granting the motion.'"  *Alexander v. CareSource*, 576 F.3d 551,

558 (6th Cir. 2009) (quoting *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009)).

The court must view the evidence, all facts, and any inferences that may permissibly be

drawn from the facts in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus.*

*Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Civil Rule 56(c)(1) provides:

(1)  Supporting Factual Positions.  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

    (A)    citing to particular parts of material in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

    (B)    showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

## ANALYSIS

**A.**    **Plaintiff Is Entitled To Summary Judgment As To His TCPA Claim Against Defendant  PDL And Defendant Belstadt**

In Count I, Plaintiff alleges that Defendants PDL, V, Cobb, and Belstadt violated the portion of the TCPA codified at 47 U.S.C. § 227(b)(1)(A)(iii) by making numerous phone calls to Plaintiff's cellular phone using an automatic telephone dialing system or pre-recorded voice without Plaintiff's consent.  (Pl.'s Am. Compl. at ¶ 109).  Plaintiff argues that PDL undisputably made prerecorded calls to Plaintiff's cellular phone after Plaintiff repeatedly and explicitly asked PDL to refrain from calling him.  Plaintiff contends that the phone calls were made willfully and knowingly.

Defendants argue that Plaintiff is not entitled to summary judgment as to the TCPA claim because: (1) Plaintiff has failed to produce admissible evidence of such calls; (2) Plaintiff did not effectively revoke consent under the TCPA; (3) in the event that the Court finds that such violations did occur, the violations were not willful; (4) Defendant Belstadt cannot be held jointly liable; and (5) because Plaintiff has settled with a previous co-defendant for the same

TCPA claims, Plaintiff is not entitled to double recovery.  (Def.'s Resp. at 17-23).

For reasons more fully developed below, the Court shall grant summary judgment on the issues of liability and statutory damages against Defendants PDL and Belstadt.  However, because Plaintiff has not calculated the amount of damages he believes he is entitled to and because Defendants' "double recovery" argument has merit and warrants further consideration, *see Shamblin v. Obama for America*, 2015 WL 6123731 (MD. Fl. Oct. 16, 2015), the Court shall not and cannot specify the amount of damages to be awarded against Defendants at this time.

## 1.    The TCPA

The TCPA was "enacted in an effort to address a growing number of telephone marketing calls and certain telemarketing practices that Congress found to be an invasion of consumer privacy."  *Pugliese v. Professional Recovery Service, Inc*., 2010 WL 2632562, at *6 (E.D. Mich. June 29, 2010).  In pertinent part, the TCPA regulates the use of automated telephone equipment, which is defined as "equipment which has the capacity to (A) store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."  47 U.S.C. § 227(a)(1).  Relevant to Plaintiff's TCPA claim here is § 227(b)(1), which provides, in pertinent part, that:

> (1) Prohibitions.  It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States–
>
> > (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice–
> >
> > * * * *
> >
> > (iii) to any telephone number assigned to a paging service, *cellular telephone service*, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call;

14

47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added).

In order to establish a prima facie TCPA case for calls made to a cellular phone, Plaintiff must show that: "(1) a call was placed to a cell or wireless phone; (2) by the use of any automatic dialing system and/or leaving an artificial or prerecorded message, and (3) without prior consent of the recipient." *Pugliese*, 2010 WL 2632562 at *7.  Here, Defendants argue that Plaintiff has not satisfied the first and third elements of his prima facie case.

### a.    Evidence of Calls Made To Plaintiff's Cellular Phone

Plaintiff's TCPA claim stems from 11 automated and prerecorded calls made to Plaintiff's cellular phone after he had asked PDL representatives to stop calling him.  To support this allegation, Plaintiff offers his interrogatory answers, which state that Plaintiff asked all telephonic communication to cease on February 10, 2014 and a report that details 12 automated calls made by Global Connect on behalf of PDL between the dates of December 30, 2013 through July 8, 2014.  (Ex. 11 to Pl.'s Br., Call Detail Report).

Defendants argue that Plaintiff has not shown, by way of any admissible evidence, that these calls were made to Plaintiff's cellular phone.  Specifically, Defendants argue that the call detail report purporting to show calls placed to Plaintiff does not contain the number that was dialed and that the call detail report was not produced with an authenticating affidavit. Defendants' argument is without merit.

The call detail report offered by Plaintiff to prove that automated calls were placed to his cellular phone after February 2014 was authenticated and discussed during the deposition of Global Connect representative, Darrin R. Bird.  (Ex. 8 to Pl.'s Br., Bird Dep. at 21).  Bird testified that PDL was Global Connect's client and that Global Connect delivered automated and

15

prerecorded messages to phone numbers provided by PDL on PDL's behalf.  (*Id*. at 10, 61).

During his deposition, Bird stated that he gathered a record of all automated calls made to

Plaintiff's cellular phone (the 4826 number) and he produced the report in question.  (*Id*. at 21-

22).  He further testified that each of the calls itemized on the call detail report reflect that an

automated message was delivered to a live person or a machine.  (*Id*. at 21, 61).  This deposition

testimony sufficiently authenticates the call detail record proffered by Plaintiff.

      In their sur-reply, Defendants also attack the authenticity of all deposition excerpts

attached to Plaintiff's motion because Plaintiff failed to attach a court reporter's certificate to the

transcripts as is required by law.  Defendants correctly recite the law, *i.e.* to authenticate a

deposition excerpt, a party should include the cover sheet (which Plaintiff did) and the court

reporter's certificate (which Plaintiff failed to do).  Plaintiff's have remedied this by attaching

the required certificates as exhibits to their supplemental brief.  (*See* Ex. 2-9 to Pl.'s Suppl. Br.)

### b.    Plaintiff Effectively Revoked Prior Express Consent

      Plaintiff contends that there can be no dispute that he orally revoked consent in February

2014 while on the phone with a PDL agent.  Defendants counter that Plaintiff did not effectively

revoke consent under the TCPA.  (Def.s' Resp. at 19).  Specifically, Defendants argue that

"[s]everal courts have held that where a Plaintiff combines claims under the FDCPA and TCPA,

any attempted revocation of consent under the TCPA must be made in writing."  (Def.s' Resp. at

19).  To support this proposition, Defendants cite three unpublished Western District of New

York decisions: *Starkey v. Firstsource Advantage, LLC*, 2010 WL 2541756 (W.D.N.Y. 2010);

*Moore v. Firstsource Advantage, LLC*, 2011 WL 4345703 (W.D.N.Y. 2011); and *Moltz v.

Firstsource Advantage, LLC*, 2011 WL 3360010 (W.D.N.Y. 2011).  Defendants fail to

substantiate their reliance on these cases with any further discussion.

The Court finds Defendants' position unpersuasive. Based upon the Court's review of the relevant case law and the FCC's most recent declaratory ruling, the Court concludes that Plaintiff has effectively revoked his prior express consent under the TCPA.

It is first worth noting that the TCPA is silent as to whether and how a consumer may revoke prior express consent. The Sixth Circuit has similarly not addressed the issue of consent revocation under the TCPA. District courts addressing this issue have reached contradictory conclusions, including: (1) that consent may never be revoked under the TCPA, *see e.g. Saunders v. NCO Financial Systems, Inc*. 910 F. Supp. 2d 464, 469-70 (E.D.N.Y. 2012); (2) that consent under the TCPA may only be revoked in writing, *see e.g., Starkey v. Firstsource Advantage, LLC*, 2010 WL 2541756 (W.D.N.Y. 2010); and (3) that consent may be revoked either orally or in writing. *See e.g. Guiterrez v. Barclays Group*, 2011 WL 579238, *3-4 (S.D. Cal. 2011); *Adamcik v. Credit Control Services*, 832 F. Supp. 2d 744, 749-53 (W.D. Tex. 2011).

Notably, only two federal appellate courts have addressed the issue of consent revocation under the TCPA. As a more general matter, the Third Circuit held that "the TCPA's silence as to revocation should not be seen as limiting a consumer's right to revoke prior express consent. Instead, we view the silence in the statute as evidence that the right to revoke exists." *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 268-272 (3d Cir. 2013).

Next, and most relevant to the issue presently before the Court, is the Eleventh Circuit's decision in *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1255-56 (11th Cir. 2014). There, the Eleventh Circuit specifically rejected the line of reasoning Defendants urge the Court to adopt here. The Eleventh Circuit held that "[b]ecause the TCPA lacks equivalent language

17

[found in the FDCPA], it had no reason to assume that Congress intended to impose a similar in-writing requirement on the revocation of consent under the TCPA." *Id.* In so finding, the Eleventh Circuit concluded that allowing consent to be revoked orally is consistent with the government interest articulated in the TCPA's legislative history. *Id*.

The Eleventh Circuit's reasoning in *Osorio* is also consistent with the FCC's most recent declaratory ruling ("2015 FCC Ruling"). In the 2015 FCC Ruling, the FCC clarified that, under the TCPA, "[c]onsumers have a right to revoke consent, using any reasonable method including orally or in writing. Consumers generally may revoke, for example, by way of a consumer-initiated call, directly in response to a call initiated or made by a caller." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 F.C.C. Rcd. 7961, 7996 ¶ 64, 2015 WL 4387780 (2015) (hereinafter "2015 FCC Ruling").

The Court finds the 2015 FCC Ruling and the Eleventh Circuit's decision in *Osorio* to be persuasive authority on the issue of consent revocation under the TCPA. Accordingly, Plaintiff has established that he clearly revoked his prior express consent in February 2014. Defendants have failed to point to any fact in the record establishing otherwise.

### c. Plaintiff Has Established That Defendants' Violations Were Willful

Because the record establishes that Plaintiff effectively revoked prior consent, any calls made after revocation constitute violations of the TCPA. Here, Plaintiff alleges that Defendants' TCPA violations were willful. Defendants counter that any violation of the TCPA was not willful. Defendants' argument here is admittedly "[b]ased on the premise that consent must be revoked in writing..." (Def.s' Resp. at 21). Defendants advance no other argument to support their position.

18

Because the Court does not believe that revocation under the TCPA must be made in writing, it could reject Defendants' argument on this basis alone.  However, a brief discussion of the relevant law also supports rejection of Defendants' position.  As such, the Court concludes that Plaintiff has established that Defendants willfully violated the TCPA by continuing to place automated calls to Plaintiff's cellular phone *after* Plaintiff had asked that such communications cease.

The TCPA provides for a right of action and permits a party to recover actual monetary loss for a violation of § 227(b)(1)(A), "or to receive $500 in damages for each such violation, whichever is greater."  47 U.S.C. § 227(b)(3)(B); *Mims v. Arrow Financial Services, LLC*, 132 S.Ct. 740 (2012).  "The TCPA is essentially a strict liability statute which imposes liability for erroneous unsolicited [calls]."  *Alea London Ltd. v. American Home Services, Inc*., 638 F.3d 768, 776 (11th Cir. 2011) (quoting *Penzer v. Transp. Ins. Co.*, 545 F.3d 1303, 1311 (11th Cir. 2008)).

"The TCPA does not require any intent for liability except when awarding treble damages."  *Alea London Ltd.*, 638 F.3d at 776.  Section 227(b)(3) provides, "[i]f the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph."  47 U.S.C. § 227(b)(3).  "Importantly though, the intent for treble damages does not require any malicious or wanton conduct, but rather is satisfied by merely 'knowing' conduct." *Alea London Ltd.*, 638 F.3d at 776.

"In order for Plaintiff to prove that Defendants knew that they acted in a manner that violated the statute ... Plaintiff must ... show that the Defendants knew that Plaintiff did not

19

consent to the phone calls." *Harris v. World Financial Network Nat. Bank*, 867 F. Supp. 2d 888, 895 (E.D. Mich. 2012); *see also Duchene v. Onstar, LLC*, 2016 WL 3997031, at *7 (E.D. Mich. July 26, 2016) (Plaintiff need only plead that Defendant was made aware of/notified Defendant that Plaintiff did not consent to calls from Defendant).

In his interrogatory answers, Plaintiff stated that he requested no further contact from PDL or its representatives on February 10, 2014 and again on February 12, 2014. (Pl.'s Interrogatory Answers at ¶¶ 1e, 1f). Plaintiff has also provided the audio recording of two phone calls, wherein Plaintiff advised PDL agents to stop contacting him telephonically. Thus, Defendants were put on notice, as of February 2014, that Plaintiff no longer wished to receive phone calls from PDL. Despite this, PDL agents failed to make any notation in Plaintiff's account notes to reflect his requests and acted in reckless disregard of Plaintiff's rights under the TCPA. Defendants have not pointed to any fact in the record that disputes Plaintiff's evidence in any way. The Court therefore concludes that there is no genuine issue of material fact as to whether Defendants continued to place prerecorded and automated calls to Plaintiff's cellular phone after Plaintiff requested such communications to cease.

### d.    Defendant Belstadt May Be Held Individually Liable For PDL's TCPA Violations

Plaintiff seeks to hold Defendant Belstadt individually liable for the TCPA violations committed by Defendant PDL. Defendants argue that "Plaintiff has not created a genuine dispute as to whether [Defendant] Belstadt may be held vicariously liable" for such violations. (Def.s' Resp. at 21). Specifically, Defendants contend that Plaintiff has not established that a "'clear and unequivocal' agency relationship exists between Belstadt and Global Connect." (*Id.* at 22). Defendants further contend that as a corporate officer, it must be established that

20

Defendant Belstadt personally engaged in conduct that clearly violated the TCPA.  (*Id.*).
Defendants' arguments are misplaced.

Numerous district courts have held that corporate actors may be *individually* liable for a
TCPA violation where they "had direct, personal participation in or personally authorized the
conduct found to have violated the statute."  *Jackson Five Star Catering, Inc. v. Beason*, 2013
WL 5966340, at *4 (E.D. Mich. Nov. 8, 2013) (quoting *Van Sweden Jewelers, Inc. v. 101 VT*,
Inc., 2012 WL 4074620 (W.D. Mich. June 21, 2012) (internal citations and quotations omitted);
*see also Sandusky Wellness Center, LLC v. Wagner Wellness, Inc*., 2014 1333472 at *3 (N.D.
Ohio Mar. 28, 2014)) (listing district courts around the country who have held that an individual
must have direct, personal participation or authorization to be liable).

"Courts have generally imposed liability upon individual defendants based upon their
status as employees of an entity that committed TCPA violations when those defendants had
significant authority over the corporation that committed the TCPA violations."  *Roylance v.
ALG Real Estate Services, Inc*., 2015 WL 1255544, at * 7 (N.D. Cal. March 16, 2015).  For
example, "individual defendants were held personally liable when they were 'the only corporate
officers' of the corporation and 'set company polices and oversee day-to-day operations' and
thus 'were clearly involved in the business practices that led' to the unlawful conduct."  *Id.*
(quoting  *Covington & Burling v. Int'l Marketing & Research, Inc*., 2003 WL 21384825, at *6
(D.C. Super.Ct. Apr. 17, 2003)).

Here, it is undisputed that Defendant Belstadt is PDL's highest ranking official and is
responsible for establishing PDL's policies and practices.  (Ex. 4 to Pl.'s Resp. at 8-9)  It is also
undisputed that Defendant Belstadt served as one of Global Connect's primary points of contact.

21

(Ex. 8 to Pl.'s Br., Global Connect Dep. at 62).  Defendant Belstadt was trained on Global

Connect's autodialer system. (*Id*. at 58).  At his deposition, Defendant Belstadt explained that

Global Connect obtained the names and phone numbers of debtors when PDL uploaded said

information on Global Connect's website.  (Ex. 3 to Pl.'s Reply, Belstadt Dep. at 15).

    As such, it cannot be disputed that Defendant Belstadt was aware of, and essentially

authorized, Global Connect's use of an autodialer system to deliver prerecorded messages to

Plaintiff's cellular phone.  Thus, the Court finds Defendant Belstadt individually liable for the

TCPA violations at issue here.

### e.    Defendant's "Double Recovery" Argument Has Merit

    To the extent that the Court finds Defendants liable for the TCPA violations, Defendants

argue that "[t]here is no basis for permitting double recovery under the TCPA, which expressly

recognizes only one recovery."  (Def.s' Resp. at 22).  Defendants' argument is premised upon

the fact that Avante Teleadvance, Inc. (d/b/a "Check 'N Go Online") was originally named as a

co-defendant in this action before Plaintiff and Check 'N Go agreed to settle.  (*Id*. at 23).

Plaintiff's complaint originally alleged that Check 'N Go, along with Defendants, violated the

TCPA for calls placed to Plaintiff's cellular phone.  (*Id*.).  Defendants conclude that, if

Defendants PDL or Belstadt are found liable under the TCPA, any amount awarded must be

reduced by the amount Plaintiff recovered from Check 'N Go.  (*Id*.).  Defendants fail to cite any

applicable law to support their position.  Plaintiff's response in opposition confuses the issue by

discussing why Defendants are not entitled to contribution from co-defendants and by discussing

the collateral source rule.

    Although neither party adequately addresses this issue, the Court finds that Defendants'

position has merit.  As an initial matter, the TCPA limits statutory damages to one award per call.  *Charvat v. GVN Michigan, Inc*., 561 F.3d 623, 630 (6th Cir. 2009).  As to the issue of "double recovery" by way of prior settlement, the Court was only able to locate one case to help guide in its analysis.

In *Shamblin v. Obama for America*, a plaintiff brought TCPA claims against three defendants.   One of the three defendants entered into a settlement with the plaintiff and agreed to offer full monetary relief.  *Shamblin*, 2015 WL 6123731, at *1.  Thereafter, the remaining defendants sought to settle with the plaintiff by agreeing to enter an injunction enjoining any further violations of the TCPA.  *Id.*  The remaining defendants also sought to dismiss the case because the plaintiff had been offered full relief under the TCPA.  Relevant to the instant issue, the *Shamblin* court noted as follows:

> To [Plaintiff's] credit, [she] appears to concede that she has been fully compensated, monetarily, and is not entitled to any damages from the remaining Defendants, as New Partners paid the full amount of statutory damages and taxable costs available for the alleged violations of the TCPA.

*Id.*  In so finding, the *Shamblin* court further noted that courts should preclude double recovery by an individual.  *Id.* at n.1 (quoting *Gen. Tel. Co. v. EEOC*, 446 U.S. 318, 333 (1980)).

The Court finds *Shamblin* instructive as to the instant issue.  Like the plaintiff in *Shamblin*, Plaintiff here has settled with Check N' Go for the same alleged calls it seeks to hold Defendants liable for now.  To the extent that Plaintiff has been compensated for such calls, he should not be permitted to recover again under the TCPA.

### B.     Plaintiff is Entitled to Summary Judgment As To Some, But Not All, Of His FDCPA Claims

The FDCPA was enacted in order "to eliminate abusive debt collection practices by debt

23

collectors, to insure that those debt collectors who refrain from using abusive debt collection

practices are not competitively disadvantaged, and to promote consistent State action to protect

consumers against debt collection abuses."  15 U.S.C. § 1692(e).  The FDCPA is considered a

strict liability statute, *Kistner v. Law Offices of Michael P. Margelefsky*, 518 F.3d 433, 438 (6th

Cir. 2008), and a consumer need only prove that the debt collector violated "any provision" of

the Act to be entitled to damages.  15 U.S.C. § 1692k.  Courts are required to analyze alleged

FDCPA violations "through the lens of the least sophisticated consumer."  *Gionis v. Javitch,*

*Block & Rathbone LLP*, 238 Fed. App'x 24, 28 (6th Cir. 2007).  The least sophisticated

consumer "can be presumed to possess a rudimentary amount of information about the world and

a willingness to read a collection notice with some care."  *Clomon v. Jackson*, 988 F.2d 1314,

1319 (2d Cir. 1993).

In order for Plaintiff's claims to fall within the purview of the FDCPA, the following

must be established: (1) that Plaintiff is a "consumer," as defined under 15 U.S.C. § 1692a(3);

(2) that Plaintiff incurred a "debt," as defined under 15 U.S.C. § 1692a(5); (3) that Defendants

are "debt collectors," as defined under 15 U.S.C. § 1692a(6); and (4) that Defendants violated

one or more of the FDCPA's prohibitions.  *Estep v. Manly Deas Kochalski, LLC*, 942 F. Supp.

2d 758, 766 (S.D. Ohio Apr. 29, 2013) (internal citations omitted).  It is undisputed for purposes

of summary judgment that Plaintiff is a "consumer" as defined by the FDCPA and that

Defendant PDL is a "debt collector" as defined by the FDCPA.

The following is disputed by the parties: (1) whether Plaintiff incurred a consumer debt;

(2) whether Defendant Belstadt, in his individual capacity, is a "debt collector;" (3) whether

Defendant Pfalzer is a "debt collector;" and (4) whether Defendants acted in violation of one or

more of the FDCPA's prohibitions.  The Court shall address each below.

### 1.    Plaintiff Incurred A Consumer Debt, As Is Required Under The FDCPA

"A threshold requirement for application of the FDCPA is that the prohibited practices are used in an attempt to collect a 'debt,'" as that term is defined by § 1692a(5).  *Zimmerman v. HBO Affiliate Group*, 834 F.2d 1163, 1167 (3d Cir. 1987).  The FDCPA does not apply to debts incurred for business purposes.  *Horton v. Trans. Union, LLC*, 2015 WL 1055776, at *5 (E.D. Pa. March 10, 2015).  It is Plaintiff's burden to establish that the obligation at issue was a consumer debt, which is one incurred "primarily for personal, family or household purposes." *Id.*    To support the allegation that the debt at issue was a consumer debt, Plaintiff points to his own declaration, which states that Plaintiff "borrowed money from Check 'N Go for personal purposes."  (Pl.'s Dec. at ¶ 6).  Defendants dispute this by arguing that this "conclusory" statement is insufficient to establish that the debt was consumer in nature.  (Def.s' Sur-Reply at 2; Def.s' Resp. at 6).  Defendants' argument is without merit.  Moreover, Plaintiff's deposition testimony establishes that Plaintiff borrowed money from Check 'N Go to pay bills and to make reparations to his personal car.  (Ex. 10 to Def.s' Resp., Pl. Dep. at 21-22).  Accordingly, there is no genuine issue of material fact as to whether Plaintiff incurred a consumer debt.

### 2.    Defendant Belstadt's Individual Liability

Plaintiff seeks to hold Defendant Belstadt individually liable on his claims under the FDCPA. Defendants argue that Defendant Belstadt is not a "debt collector" and is therefore not subject to personal liability under the FDCPA.  (Def.s' Resp. at 14).  Whether or not Belstadt is a "debt collector" under the FDCPA is a question of law for the Court to resolve.  *Kistner*, 518 F.3d at 435-38.  The record contains factors that make this question somewhat of a close call.

With that in mind, the Court believes that the undisputed facts establish that Defendant Belstadt is a "debt collector" for purposes of the FDCPA.

The FDCPA defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).

The Sixth Circuit has advised that a member of an LLC can be held personally liable under the FDCPA so long as the employee individually qualifies as a "debt collector." *Kistner,* 518 F.3d at 37-38 (holding "that subjecting the sole member of an LLC to individual liability for violations of the FDCPA will require proof that the individual is a 'debt collector,' but does not require piercing of the corporate veil").

In *Kistner*, the Sixth Circuit determined that the defendant was subject to individual liability on the basis of his general participation in the debt collection activities of the LLC. *Id.* 437. The court in *Kistner* explained that personal "liability is not premised solely on the fact that [the defendant] works for, and is the sole member of, the Law Offices." *Id.* at 438. Instead, the defendant in *Kistner* had performed a number of acts that supported a finding that he "regularly engaged, directly or indirectly, in the collection of debts."

The Sixth Circuit's finding rested upon the following undisputed facts: (1) the defendant drafted the form letter that was sent to the plaintiff/debtor; (2) the defendant was one of only two attorneys at the law firm; (3) the defendant was the only member of the LCC; (4) the defendant negotiated terms with the mailing service provider used in the debt-collection practice; (5) the defendant oversaw compliance with applicable collection laws and when the intervention by a

26

lawyer became necessary; and (6) the remittance voucher directed the plaintiff to make her check payable to the defendant individually.  *Id.* at 438.

The *Kistner* court cited *Ditty v. CheckRite, Ltd.*, 973 F. Supp. 1320 (D.Utah 1997), as an example of circumstances which give rise to individual liability.  In *Ditty*, the district court premised a finding of personal liability on the part of the sole member of a law firm on the following grounds: (1) the defendant was the firm's sole attorney; (2) the defendant was the developer of the "covenant not to sue" practice; and (3) the defendant supervised all of the firm's collection activities.  *Ditty*, 973 F. Supp. at 1336-37.

Here, the undisputed facts establish that Belstadt "regularly collect[ed] or attempt[ed] to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  First, the Court notes that the collection activities at issue in this case were PDL's primary source of income.  Notably, as PDL's highest ranking official, Belstadt developed and implemented policies and procedures for a company whose primary profit-generating activity was the collection of debts.  This is a significant distinction between this case and other cases, such as *Kistner*, where the defendants were members of companies that did not solely engage in debt collection.

Moreover, the fact that Belstadt did not personally collect debts is irrelevant where, as here, the FDCPA explicitly includes in its definition of debt collector those individuals who *indirectly* participate in debt collection activities.  15 U.S.C. § 1692a(6).  Here, in addition to establishing policies that PDL employees were required to follow, Belstadt's day-to-day activities included checking in with, and answering the questions of, employees (floor managers and administrators) who were directly involved in PDL's debt collection efforts.  Belstadt also

27

testified that he and the floor managers answered questions from debt collectors regarding compliance with the FDCPA. (Ex. 4 to Pl.'s Br. at 35). If there were any changes or updates in the law, Belstadt would share that information with PDL employees if he "felt that it was something that should be shared." (*Id*. at 37-38). Belstadt also served as one of two primary points of contact for PDL's auto-dialing service, Global Connect.

Defendants' argument against personal liability is focused primarily on the fact that Plaintiff has "fail[ed] to connect any personal involvement of Defendant Belstadt to Plaintiff's alleged violations of the FDCPA." (Def.s' Resp. at 17). As noted earlier, however, Plaintiff need not point to evidence establishing that Belstadt was *directly* involved in the alleged FDCPA violations so long as the facts establish his general participation in PDL's debt collection activities. The Court concludes that Defendant Belstadt qualifies as a debt collector under the FDCPA because he was regularly engaged, at least *indirectly*, in the collection of debts.

### 3.      Defendant Pfalzer's Liability

Defendant Pfalzer is proceeding *pro se* in this matter. In her one-page response to Defendants' motion, Pfalzer disputes that she was a "debt collector" under the FDCPA. (Pfalzer's Resp. at PgID 2093). In so doing, Pfalzer asserts that she had no verbal communication with Plaintiff. (*Id*.). Pfalzer additionally contends that she was only a salaried employee with no financial interest in PDL.

Pfalzer need not have verbal communication with a debtor or a financial interest in the debt collection agency to qualify as a "debt collector" under the FDCPA. Here, the undisputed facts establish that, at all times relevant to the instant action, Pfalzer was an agent of Defendant PDL – she served as administrative director of PDL. Pfalzer's primary responsibilities at PDL

28

included sending debtor letters and processing debtor payments. Pfalzer testified that she supervised the payment processing of all money that came into PDL and that she processed three payments for Plaintiff's account.

Under a plain reading of the FDCPA, Pfalzer's responsibilities render her a "debt collector" under the FDCPA.

### 4.    Alleged FDCPA Violations

In his motion, Plaintiff asserts that there can be no genuine dispute of material fact as to whether or not Defendants have violated the following provisions of the FDCPA: (1) 15 U.S.C. § 1692g, by failing to send Plaintiff required notice within five days after their initial communication; (2) 15 U.S.C. § 1692c(b), by communicating with individuals from Plaintiff's place of employment in connection with the collection of a debt; (3) 15 U.S.C. § 1692c(a)(1), by communicating with Plaintiff at a place or time known or which should be known to be inconvenient to Plaintiff; (4) 15 U.S.C. § 1692c(a)(3), by communicating with Plaintiff at his place of employment when it should have been known that such communication was prohibited; and (5) 15 U.S.C. § 1692d, by engaging in conduct the natural consequence of which is to harass, oppress, or abuse Plaintiff.

### a.    15 U.S.C. § 1692g

Plaintiff argues that Defendants PDL, Belstadt and Pfalzer violated 15 U.S.C. § 1692g by failing to send him required written notice detailing his rights. (Pl.'s Am. Compl. at ¶ 47). Defendants PDL and Belstadt advance two arguments against liability. First, Defendants assert that the required notice *was* sent to Plaintiff. Second, Defendants argue that Plaintiff's § 1692g claim is barred by the applicable statute of limitations. Defendant Pfalzer's one-page response

29

also advances an argument against liability.

Although a close call, the Court concludes that Defendants have failed to sufficiently demonstrate a genuine issue of fact as to whether a letter was actually sent to Plaintiff. However, the Court shall deny Plaintiff's request for summary judgment because there exists a genuine issue of fact as to whether Defendants' violation of § 1692g(a) occurred within the applicable limitations period. The Court shall address both of Defendants' arguments below.

### i.      Whether Defendants Sent The Required Notice

Section 1692g(a) of the FDCPA requires a debt collector to provide certain written notice to a debtor within five days of the collector's "initial communication with a consumer in connection with the collection of any debt." 15 U.S.C. § 1692g(a). This Section provides, in pertinent part, that:

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer written notice containing—
>
> (1) the amount of the debt;
>
> (2) the name of the creditor to whom the debt is owed;
>
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a)(1)-(5).

Plaintiff's amended complaint alleges that Defendants violated § 1692g when they failed to provide the required written notice following his first telephone conversation with PDL, which allegedly took place on September 19, 2013.[7] (Pl.'s Am. Compl. at ¶ 47). Plaintiff concludes that there can be no dispute that Defendants violated § 1692g since the record is without any evidence establishing that Defendants actually sent the required notice to Plaintiff.

Plaintiff testified that he "never received from PDL a written notice setting forth [his] rights to dispute the debt..." (Pl.'s Dec. at ¶ 15). To further support his claim, Plaintiff points to the deposition testimony of Defendant Pfalzer, an administrator at PDL. Pfalzer testified that PDL only sent such letters to debtors upon request. (Ex. 4 to Pl.'s Reply, Pfalzer Dep. at 53). Defendants counter that they are not required to prove that Plaintiff actually *received* the notice under § 1692g. Instead, Defendants are only required to *send* the notice to Plaintiff.

It is true that "the plain language of the [FDCPA] only requires that the debt collector send the notice, not show actual receipt by the debtor." *Mahon v. Credit Bureau, Inc*., 171 F.3d 1197 (9th Cir. 1999)*; Crain v. Pinnacle Fin. Group, Inc*., 2007 WL 3408540 (E.D. Mich. Nov. 14, 2007). Accordingly, to establish that the required notice was sent, Defendants may "provide testimony that a letter was sent and not returned as undeliverable." *Mahon*, 171 F.3d at 1201.

Defendants contend that PDL "discharged its obligation under § 1692g(a) by sending written notice of Plaintiff's debt to his last known address." (Def.s' Resp. at 9). In support,

---

[7] When making this argument, Plaintiff's complaint and briefs assert that the initial communication occurred on or about October 2013. However, Plaintiff's deposition testimony and interrogatory answers establish that the first communication occurred on September 19, 2013.

Defendants point to the deposition testimony of Defendant Belstadt.  Belstadt testified that initial notice letters are generated whenever PDL receives a new batch of business.  (Ex. 4 to Def.s' Resp. at 39, 60, 63).  An administrator at PDL would be responsible for sending out such letters. Belstadt further testified that "the very first letter would have been sent when [Plaintiff's] account would have been loaded into the database," which in this case was October 26, 2012. (Ex. 5 to Def.s' Resp. at 96).  When asked what evidence there was that a letter was sent to Plaintiff, Belstadt responded: "that's the way the system works, that's what it does."  (*Id.*).

Although Defendants contend that they sent the required notice, the Court is not persuaded that they have sufficiently raised a factual dispute as to this point.  First, contrary to Defendants' assertion, Belstadt did not "unequivocally" state that an initial letter was mailed to Plaintiff.  Instead, he testified that PDL's system *generates* a letter whenever a new account is loaded in the database.  Based upon this, Belstadt concluded that a letter "would have been sent" to Plaintiff in October 2012.  Second, Defendants have failed to point to any evidence establishing that the letter was sent to the proper address.  Third, Defendants have not pointed to any evidence establishing that the letter was not returned as undeliverable.  Fourth, PDL's collection notes do not reflect the mailing of the required written notice.  Fifth, Defendants have not produced the testimony of the PDL agent who sent the letter to Plaintiff.  Belstadt could only testify that the letter would have been sent by "somebody in admin."  (Ex. 5 to Def.s' Resp. at 101).  And most fatal to Defendants' position is Defendants' failure to produce a copy of the initial notice letter sent to Plaintiff.  Instead, Defendants provide the Court with: (1) a copy of a generic notice, which Defendants allege conforms with the requirements of § 1692g(a); and (2) a copy of a settlement letter dated May 21, 2014.  (Ex. 2 to Def.s' Resp.),

32

To the extent that Belstadt's testimony relates to Plaintiff, it is based on speculation as opposed to personal knowledge. Defendants' only evidence that defendants complied with § 1692g–testimony that Plaintiff *would have* been sent a letter in October 2012 because the system generates such notices whenever a new account is placed with PDL–is insufficient to create a triable issue of material fact. *See Wysong v. City of Health*, 260 F. App'x 848, 857 (6th Cir. 2008) (if specific facts are derived from deposition testimony, it must rest upon the deponent's personal knowledge).

> **ii.     Factual Dispute Exists As To Whether Defendants' § 1692g(a) Violation Occurred Within The Applicable Limitations Period**

Although Plaintiff has established a violation of § 1692g, summary judgment is inappropriate because a fact issue exists as to *when* the initial communication between the parties first occurred. This is relevant because it affects whether or not Plaintiff's claim under § 1692g is timely. An action to enforce liability under the FDCPA must be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692K(d). Plaintiff brought the instant action against Defendants on June 3, 2014. Thus, in order for the violation to be timely, it must have occurred on or after June 3, 2013.

In his interrogatory answers, Plaintiff states that he was first contacted by PDL on September 19, 2013. If this is true, any violation resulting from Defendants' failure to send the required notice would have occurred within five days after September 19, 2013, and Plaintiff's claim would be timely.

Defendants, on the other hand, claim that PDL's initial contact with Plaintiff occurred on March 4, 2013. Defendants rely on PDL's collection notes, (Ex. 6 to Def.s' Resp. at 7-8), and on Defendant Belstadt's testimony interpreting the notes. If Plaintiff was first contacted on March

4, 2013, any violation resulting from Defendants' failure to send the required notice would have occurred within five days after March 4, 2013.  Plaintiff's claim would be untimely because it would have been filed nearly three months after the limitations periods had run.

Because there exists a factual dispute as to whether or not Plaintiff's claim is timely, summary judgment as to the § 1692g claim is inappropriate at this time.

### b.      15 U.S.C. 1692c(b))

Plaintiff argues that Defendants PDL and Belstadt violated Section 1692c(b) of the FDCPA by placing calls to Plaintiff's employer in connection with the collection of a debt. Section 1692c(b) prohibits debt collectors from communicating with parties other than the consumer, as follows:

> Except as provided in section 1692b of this title, ***without the prior consent of the consumer given directly to the debt collector***, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, ***a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer***, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

15 U.S.C. 1692c(b) (emphasis added).  The FDCPA defines "communication" as "the conveying of information regarding a debt directly or indirectly to any person through any medium."  15 U.S.C. § 1692a(2).  "To convey information regarding a debt, a communication must at a minimum imply the existence of a debt.  Otherwise, whatever information is conveyed cannot be understood as 'regarding a debt.'"  *Brown v. Van Ru Credit Corp.*, 804 F.3d 740, 743 (6th Cir. 2015).

Plaintiff argues that the evidence overwhelmingly establishes that PDL repeatedly contacted Plaintiff's employer in violation of the FDCPA.  The following relevant facts are

34

undisputed:(1) PDL agents contacted and spoke to Plaintiff's supervisors, in connection with the collection of the Check 'N Go loan, on more than one occasion; (2) PDL agent/Defendant Hasson testified that he typically disclosed to anyone who answered a call, including a debtor's employer, that he is a debt collector working for PDL; (3) Hasson dialed Plaintiff's work land line and spoke to Plaintiff's supervisor, Jason Fettig; (4) Hasson left Plaintiff a voice mail on Plaintiff's cellular phone stating: "I just spoke to Jason at your job, basically, almost got into words with him trying to leave you a message over there. I'm not trying to jeopardize your job at all, but I do need to . . . have some contact from you at some point;" (5) Hasson testified that he could not recall any of his conversations with Plaintiff's supervisor; (6) PDL agent/Defendant Puglisi (a.k.a. Joe Kennedy) dialed Plaintiff's work land line and spoke to Plaintiff's supervisor, Jason Fettig; and (7) a PDL agent called Plaintiff's work land line, spoke to Jason Fettig and threatened to report him to the Better Business Bureau.

Defendants do not deny that PDL agents contacted and spoke to Plaintiff's supervisors. Nor do Defendants dispute that the calls were made in connection with the collection of a debt. Instead, Defendants argue that Plaintiff's evidence "does not proffer that Defendant discussed Plaintiff's debt with these individuals." (Def.s' Resp. at 12). Defendants have a point.

Although Plaintiff's evidence strongly suggests that PDL agents implied the existence of a debt when they spoke to Plaintiff's supervisors, there is not enough in the record to warrant the conclusion that Plaintiff has established a violation of § 1692c(b) as a matter of law. The substance of the third-party communications at issue remains unknown. For example, while Hasson testified that he typically disclosed to employers the fact that he was a debt collector, he also testified that he could not recall his conversations with Plaintiff's supervisors. And while it

remains undisputed that a PDL agent threatened to report Plaintiff's supervisor to the Better Business Bureau, the contents of the conversation are not known.

Because the Court cannot conclusively determine the content of PDL's communications with Plaintiff's supervisors, it cannot conclude that Plaintiff has established a violation of § 1692c(b) as a matter of law.  As such, the Court shall deny summary judgment as to the § 1692c(b) claim.

### c.      15 U.S.C. § 1692c(a)(1) and 15 U.S.C. § 1692c(a)(3)

Plaintiff alleges that Defendants violated the FDCPA by communicating with Plaintiff at a time or place known, or which should be known, to be inconvenient and despite knowing, or having reason to know, that such communications were prohibited, in violation of 15 U.S.C. § 1692c(a)(1) and § 1692c(a)(3).  In support, Plaintiff argues that although PDL agents received actual knowledge from Plaintiff that the calls to his place of employment were inconvenient and prohibited, Defendants continued to call Plaintiff at work.

Under 15 U.S.C. § 1692c, a debt collector may not communicate with a consumer in connection with the collection of any debt, without the prior written consent of the consumer, at any unusual time or place known or which should be known to be inconvenient to the consumer (15 U.S.C. § 1692c(a)(1)) or at the consumer's place of employment if the consumer's employer prohibits the consumer from receiving that type of communication (15 U.S.C. § 1692c(a)(3)).

Plaintiff's claims under these sections are premised upon the following undisputed facts: (1) On September 19, 2013, Plaintiff requested that he not be contacted Plaintiff at his place of employment and asked that he be called on his cellular phone at 5 p.m.; (2) On December 4, 2013, Plaintiff advised a PDL agent that he was not permitted to receive phone calls at work; (3)

36

PDL agents repeatedly contacted Plaintiff while at work despite Plaintiff's requests that such communications cease; and (4) PDL agents repeatedly dialed Plaintiff's work land line and spoke to Plaintiff' supervisors despite Plaintiff stating that such communications were prohibited.

Defendants advance several meritless arguments against liability. As to Plaintiff's § 1692c(a)(1) claim, Defendants argue that "Plaintiff fails to produce evidence to support his allegations that the calls were at an unusual time or place known, or which should be known, to be inconvenient." (Def.s' Resp. at 10). Defendants contend that "Plaintiff's evidence merely shows that he told Defendant not to call him at all." (*Id*.). In making this argument, Defendants conveniently ignore Plaintiff's interrogatory answers and the calls between Plaintiff and PDL agents, wherein Plaintiff explicitly asked PDL agents to stop placing calls to Plaintiff at his place of employment and/or while Plaintiff was at work.

Next, Defendants argue that "Plaintiff does not indicate that he informed PDL of the days and times that he was at work." (*Id*. at 11). This argument fails because it disregards the undisputed fact that PDL agents knowingly placed calls to Plaintiff's work land line, not just Plaintiff's cellular phone. This distinguishes the instant facts from cases where debt collectors only placed calls to the debtor's cellular phone during the presumptively reasonable hours of 8 a.m. and 9 p.m. *C.f. Saunders v. NCO Financial Systems, Inc*., 910 F. Supp. 2d 464 (E.D.N.Y. 2012) (finding that a debt collector did not violate the FDCPA by calling between 8 a.m and 9 p.m. and all calls were made to a cell phone number that debtor had provided to the creditor). This argument also lacks merit for another reason. On several occasions, when Plaintiff was contacted on his cellular phone while at work, Plaintiff advised that he was at work and would

have to return the call at a later time.  This further supports Plaintiff's claims because something was said to put PDL agents on notice that something about their calls (made between the presumptively reasonable hours of 8 a.m. through 9 p.m.) was inconvenient.

As to Plaintiff's § 1692c(a)(3) claim, Defendants argue that "Plaintiff presents no evidence that Plaintiff's employer prohibited calls to its employees, or that if it had such a policy, that the policy was communicated to Defendants."  (Def.s' Resp. at 11).  Again, Defendants are ignoring the undisputed fact that Plaintiff advised PDL agents, on more than one occasion, that he was not permitted to receive such calls at work.  This is sufficient to put Defendants' agents on notice under Section 1692c(a)(3).  *See Horkey v. J.V.D.B. & Assoc., Inc.*, 333 F.3d 769, 773 (7th Cir. 2003) (holding that consumer's statement that she could not discuss her debt at work was enough to put debt collector on notice that consumer's employer prohibited such communications at work).

Because there is no dispute that PDL agents repeatedly called Plaintiff at his place of employment after Plaintiff specifically asked that he no longer be contacted there and after he advised that he is not permitted to receive such calls, the Court shall grant summary judgment as to the §§ 1692c(a)(1) and 1692c(a)(3) claims.

### d.    15 U.S.C. § 1692d

Under 15 U.S.C. § 1692d, "a debt collector may not engage in any conduct the natural consequences of which is to harass, oppress, or abuse any person in connection with the collection of a debt."  Section 1692d lists examples of harassment, but courts have clarified that this is not an all inclusive list.  Plaintiff's motion fails to specify which enumerated example his claim is premised upon.  Instead, Plaintiff merely argues that Defendants violated the FDCPA's

38

proscription against harassing and unfair conduct by continuing to contact Plaintiff despite Plaintiff's requests that such communications cease.  (Pl.'s Br. at 16-17).

The Sixth Circuit has advised that "although the question of 'whether conduct harasses, oppresses, or abuses will [ordinarily] be a question for the jury . . . . Congress has indicated its desire for the courts to structure the confines of § 1692d.'"  *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 330 (6th Cir. 2006) (quoting *Jeter v. Credit Bureau*, 760 F.2d 1168, 1179 (11th Cir. 1985)).

Here, Plaintiff does not apply any law to the facts presently before the Court and therefore fails to assist the Court in structuring the confines of § 1692d.  Because Plaintiff fails to cite a single analogous case to support his position, the Court is unduly burdened with the task of researching whether the undisputed facts here establish liability as a matter of law.  The Court refuses to undertake this task.  As such, the Court shall deny Plaintiff's request for summary judgment as to § 1692d of the FDCPA.

## C.    Plaintiff's MOC Claims

Like the FDCPA, Michigan's Occupational Code regulates the practice of debt collection.  Plaintiff seeks summary judgment as to liability and statutory damages against Defendant PDL and its managing agent, Defendant Belstadt, for several violations of Michigan's Occupational Code ("MOC").

In his brief, Plaintiff argues that Defendants violated the following provisions of the MOC: (1) M.C.L. §§ 339.915(I), 445.252 (I), which prohibits communicating information relating to a debtor's indebtedness to an employer or an employer's agent; (2) M.C.L. §§ 339.915(n), 445.252(n), which prohibits using a harassing, oppressive, or abusive method to

39

collect a debt; (3) M.C.L. §§ 339.918, 445.252(n), which requires a debt collector to provide a notice detailing the consumer's rights under the MOC; and (4) M.C.L. § 339.915(q), which requires collection agencies to implement procedures and to avoid violations of the MOC.

### 1. Plaintiff Is Not Entitled To Summary Judgment As To His Claims Under M.C.L. §§ 339.915(I) and 339.915(n)

Plaintiff's state-law claims are based entirely on the same underlying conduct as the FDCPA claims, and all but one of these claims rest upon Michigan statutory provisions that mirror their counterparts in the FDCPA. Thus, the Court shall treat the parallel state-law claims in the same manner that it treated their FDCPA counterparts. Accordingly, the Court shall deny summary judgment against Defendants PDL and Belstadt on the following claims: M.C.L. §§ 339.915(I), and 339.915(n).

### 2. Plaintiff Is Entitled To Summary Judgment As To His Claim Under M.C.L. § 339.918

However, the Court shall not deny summary judgment as to Plaintiff's claim under § 339.918 because it is not subject to the same one-year statute of limitations applicable to § 1692g of the FDCPA. Like § 1692g, § 339.918 requires that written notice detailing a debtors rights be sent to a debtor "[w]ithin 5 days after the initial communication with a consumer in connection with a collection of a debt." M.C.L. 339.918(1). However, unlike Section 1692g, § 339.918 is subject to Michigan's "catch all" six year limitations period. *Purnell v. Arrow Fin. Servs., LLC,* 2009 WL 1508340, at *2 (E.D. Mich. May 29, 2009).

As the Court explained above, Defendants have failed to raise a genuine dispute of fact as to whether written notice was actually sent to Plaintiff. Thus, the Court shall grant summary judgment as to liability and statutory damages on this claim.

40

### 3. Plaintiff Is Not Entitled To Summary Judgment As To His Claim Under M.C.L. § 339.915(q)

Plaintiff's M.C.L. § 339.915(q) claim–that Defendants violated the MOC by failing to implement a procedure designed to prevent a violation by an employee–does not mirror an FDCPA provision and the facts underlying this claim are not the same as those underlying the FDCPA claims. Thus, the Court must address this issue separately.

A violation of M.C.L. § 339.915(q) occurs when an employer "fail[s] to implement a procedure designed to prevent a violation by an employee." Plaintiff argues that the "well documented failure of PDL to train its employees, provide a manual advising its employees of the requirements of the FDCPA or Michigan law, and the refusal to implement any recognizable disciplinary program to deter violations establishes that PDL has violated the MOC." (Pl.'s Br. at 20). In making this argument, Plaintiff does not support his position with *any* applicable case law.

Moreover, Plaintiff's argument discounts the following undisputed facts: (1) PDL administers FDCPA examinations before a debt collector is allowed on the floor and passing the exam is a condition of employment; (2) PDL randomly audits debt collection calls to ensure compliance with the FDCPA; (3) Belstadt and floor managers answer all questions debt collectors may have regarding compliance with the FDCPA; (4) Belstadt provides employees with changes/updates in the law if he believes it is necessary; and (5) floor managers are verbally instructed to include any alleged misconduct in an employee's file.

Because Plaintiff has not properly supported his position with any substantive analysis, the Court cannot conclude, as a matter of law, that Defendants failed to implement a procedure designed to prevent violations by an employee. As such, the Court shall deny summary

41

judgment as to M.C.L. § 339.915(q).

**D.     Damages Under the TCPA, FDCPA & MOC**

**1.      TCPA**

In his supplemental brief, Plaintiff clarifies that he seeks summary judgment as to liability and statutory damages on his TCPA claim.  The TCPA provides for recovery for the greater of actual monetary losses, or $500 for each violation.  In the event that a defendant acted knowingly or willfully, the statute provides for recovery by the plaintiff of treble damages, or a maximum fine of $1,500 for each violation.  47 U.S.C. § 227(b)(3).

The Court finds that Plaintiff is entitled to damages because Defendants PDL and Belstadt willfully or knowingly violated the TCPA by continuing to send prerecorded calls to Plaintiff's cellular phone after Plaintiff had asked for all communications from PDL to cease.

Here, Plaintiff does not calculate the total amount of damages he seeks against Defendants PDL and Belstadt for their violations of the TCPA.  Plaintiff must therefore submit his calculation for appropriate damages.

**2.      FDCPA**

In his supplemental brief, Plaintiff clarifies that he seeks summary judgment as to liability and statutory damages on his FDCPA claims. Plaintiff requests a jury determination as to the amount of actual damages.  The FDCPA allows a successful plaintiff to recover actual damages, reasonable attorney's fees and additional damages up to $1,000.  The statute requires the Court in the case of an individual plaintiff to consider four factors in making its award decision: the frequency, nature and persistence of the violations, and the extent to which the violations were intentional.  15 U.S.C. § 1692k(b)(1).

42

The Court finds that Plaintiff is entitled to damages against Defendants PDL and Belstadt liable for violations of §§ 1692c(a)(1) and 1692c(a)(3) of the FDCPA. Plaintiff must therefore submit his calculation for appropriate damages. As part of his calculations, Plaintiff shall address and incorporate the above mentioned statutory factors.

**3.     MOC**

Plaintiff's supplemental brief also clarifies that Plaintiff seeks summary judgment as to liability and statutory damages on his claims under the MOC. Plaintiff also seeks enhanced damages under the MOC. The MOC provides damages. *See* M.C.L. § 339.916(2) ("recovery shall be in the amount of actual damages or $50.00, whichever is greater. If the court finds that the method, act, or practice was a wilful violation, it may award a civil penalty of not less than 3 times the actual damages, or $150.00, whichever is greater...").

The Court finds that Plaintiff is entitled to damages against Defendants PDL and Belstadt for violations of M.C.L. 339.918. Plaintiff must therefore submit his calculation for appropriate damages.

<strong>CONCLUSION & ORDER</strong>

For the foregoing reasons, Plaintiff's partial motion for summary judgment is **DENIED IN PART and GRANTED IN PART**.

Plaintiff's motion is **DENIED** as follows:

- The Court shall DENY summary judgment against Defendants PDL, Belstadt and Pfalzer as to § 1692g of the FDCPA because a material dispute of fact exists as to whether such a claim is timely;

- The Court shall DENY summary judgment against Defendants PDL and Belstadt as to § 1692c(b) and § 1692d of the FDCPA and as to M.C.L. § 339.915(I) and § 339.915(n) of the MOC; and

43

- The Court shall DENY summary judgment against Defendants PDL and Belstadt for violating M.C.L. § 339.915(q) of the MOC

Plaintiff's motion is **GRANTED** as follows:

- The Court shall GRANT summary judgment as to Count I on the issue of liability and statutory damages against Defendant PDL Recovery and Defendant Belstadt for willful violations of § 227(b)(1)(A)(iii) of the TCPA;

- The Court shall GRANT summary judgment on the issue of liability and statutory damages against Defendants PDL and Belstadt for violations of § 1692c(a)(1) and § 1692c(a)(3) of the FDCPA; and

- The Court shall GRANT summary judgment on the issue of liability and statutory damages against Defendants PDL, Belstadt and Pfalzer for violations of M.C.L. § 339.918 of the MOC.

**PLAINTIFF IS THEREFORE ORDERED** to submit his calculations for appropriate

damages, consistent with this Opinion & Order, **no later than three weeks** from the date in

which this Opinion & Order is issued.  Additionally, because the Court finds merit in

Defendants' double recovery argument, the parties are ordered to appear for a status conference

as to this issue on **April 4, 2017 at 2 p.m**

**IT IS SO ORDERED.**


Dated:  February 23, 2017                    s/Sean F. Cox
                                             Sean F. Cox
                                             U. S. District Judge


I hereby certify that on February 23, 2017, the foregoing document was served on counsel of record via electronic means and upon Mara Pfalzer via First Class mail at the address below:

Mara Pfalzer
919 Bennett Road
Angola, NY 14006


                                             s/J. McCoy
                                             Case Manager