UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Ryan Currier,

    Plaintiff,

v.                                                           Case No. 14-12179

PDL Recovery Group, LLC, *et al.*,        Sean F. Cox
                                                                  United States District Court Judge

    Defendants.

_____/

## ORDER GRANTING IN PART & DENYING IN PART
## PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AS TO PDL RECOVERY AND
## JAMIE BELSTADT (Doc. # 186)

Plaintiff originally filed this action on June 3, 2014, asserting claims pursuant to Telephone Consumer Protection Act ("TCPA"), the Fair Debt Collection Practices Act ("FDCPA"), the Michigan Occupational Code ("MOC"), and the Michigan Collection Practices Act ("MCPA").

Currently before the Court is Plaintiff's "Motion for Attorney Fees as to PDL Recovery and Jamie Belstadt." (Doc. # 186, Pl.'s Mo.). Defendants have responded to the motion (Doc. # 191, Def.s' Resp.), and Plaintiff has replied. (Doc. # 215, Pl.'s Reply). Plaintiff asks for an attorney fee award of $212,234.80. To account for any discrepancies, Plaintiff's amount reflects a 30% across-the-board reduction to the total fee award.[1] (Pl.'s Reply at Pg ID 3020). The Court finds the facts and legal arguments are adequately presented in the parties' briefs such that oral argument will not significantly aid in the decisional process. It is therefore ordered that the

---

[1] This 30% reduced figure was computed by Plaintiff using the hourly rates proposed by Plaintiff.

1

motion will be resolved on the briefs submitted. E.D. Mich. LR 7.1(f)(2).

For the reasons that follow, the Court shall **GRANT in part and DENY in part** Plaintiff's motion. Plaintiff's motion is **GRANTED** to the extent that it seeks an award of attorney fees. However, the motion is **DENIED** to the extent that it seeks $212,234.80 in fees. Instead, the Court awards Plaintiff $153,877, which is reasonable in light of the facts and circumstances of this case.

## BACKGROUND

As a threshold matter, the Court notes that this simple case has been aggressively litigated by both parties – as evidenced by the 216 docket entries over the course of three years.

**A.     Procedural Background**

On June 3, 2014, Plaintiff filed this action pursuant to the TCPA, FDCPA, MOC, and MCPA. Plaintiff originally named the following as defendants in this case: PDL Recovery Group, LLC, Avante Teleadvance, Inc., Mara Pfalzer, Benjamin J. Hoey, Jamie Belstadt, Ronald Cobb, Vera B. Ray, and John Does (1-20). (Doc. # 1). Sometime thereafter, Plaintiff settled the TCPA claims against Avante Teleadvance, and he voluntarily dismissed Benjamin Hoey and Ronald Cobb[2] from this case.

On June 29, 2015, Plaintiff filed a second amended complaint – the operative complaint in this case. (Doc. # 48). The following were named as defendants: PDL Recovery Group, LLC; V, Cobb Associates, LLC; Mara Pfalzer; Jamie Belstadt; John Puglisi; and Mike Hasson. Plaintiff alleged that Defendants violated the TCPA by placing 11 unauthorized pre-recorded

---

[2] It was determined that Ronald Cobb is a fictional person. The name appeared on letters from Defendant PDL to Plaintiff.

calls to Plaintiff's cellular phone. Plaintiff also alleged that Defendants violated the FDCPA and MOC by failing to send the required notice under the Act and by placing harassing phone calls to Plaintiff's place of employment in an effort to collect on a debt.

Since the filing of the second amended complaint, Clerks Entries of Default have been entered against Defendants V, Cobb Associates, Puglisi, and Hasson. On August 10, 2016, Plaintiff filed a partial motion for summary judgment, seeking judgment in his favor against Defendants PDL, Belstadt, and Pfalzer as to liability and statutory damages under the TCPA, FDCPA, and MOC. (Doc. # 142, Pl.'s MSJ).

The Court granted in part and denied in part Plaintiff's motion. (Doc. # 170). The Court granted Plaintiff's motion to the extent that he sought statutory damages against PDL and Belstadt for willful violations of the TCPA. The Court also granted Plaintiff's motion to the extent that he sought statutory damages against PDL, Belstadt, and Pfalzer for violations of certain subsections of the FDCPA and the MOC. Plaintiff was subsequently ordered to file his calculations for appropriate statutory damages. On March 9, 2017, Defendants filed a Motion for Reconsideration, which the Court denied on May 1, 2017.

Following a status conference with the Court, the parties settled the remainder of the case. Plaintiff settled his claims against Mara Pfalzer and entered into a consent judgment for $50. Defendants PDL and Belstadt entered into a Final Stipulated Judgment with Plaintiff on May 10, 2017. (Doc. # 181). The parties stipulated to a damage award of $22,500 – $16,500 statutory damages for the willful TCPA violations and $6,000 statutory and actual damages for the violations under the FDCPA and MOC. The parties also agreed to attempt to resolve the attorney's fees and costs.

Because the parties were unable to resolve the issue of attorney's fees, Plaintiff filed the instant motion on July 10, 2017. Plaintiff contends that his attorneys have expended 1,170.6 hours litigating this case over the course of three years, which results $298,318.50 in attorney fees. Plaintiff agrees to reduce his total fee award to $212,234.80, which constitutes a 30% reduction. The motion has been fully briefed by the parties.

## ANALYSIS

In support of his motion, Plaintiff submits a 115-page billing statement, which chronologically lists the services rendered, hours expended, and the billing attorney/staff member. (Ex. 1 to Pl.'s Mo.).

Defendants do not dispute that Plaintiff is entitled to attorney fees in this action. However, Defendants argue that Plaintiff's hourly rates are unreasonable, and that Plaintiff's expended hours are excessive and unreasonable. Defendants propose that: (1) Plaintiff's requested fees should be reduced to $59,663.70 (73% across-the-board reduction) to reflect the proportion of the settlement award relating to the FDCPA claims, *i.e.*, to reflect limited success; or (2) that Plaintiff's fees should be reduced by $126,481 to account for improper billing, *i.e.*, billing time for clerical work, duplicative efforts, vague descriptions, travel time, time relating to other defendants, time for unnecessary discovery.

The Court finds Plaintiff's requested fee of $212,234.80 unreasonable. Plaintiff's proposed hourly rates are high. And while Defendants' dilatory litigation (evading Plaintiff's discovery efforts) strategy is partly to blame, Plaintiff's attorneys over-staffed and over-billed this straight forward case.

**A.     Attorney Fees**

Although Plaintiff received partial summary judgment in his favor as to the TCPA, FDCPA, and MOC, he is only entitled to attorney fees as to his FDCPA and MOC claims. With respect to those claims, Plaintiff's recovery in this case amounted to approximately $6,000. The FDCPA provides that a debt collector who fails to comply with the Act is liable for "the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(3). Section 339.916(2) of the MOC similarly provides for reasonable attorney fees.

To calculate a reasonable attorney fee award, courts employ the "lodestar method," which requires the Court to multiply a reasonable hourly rate by the reasonable number of hours worked. *Ellison v. Balinski*, 625 F.3d 953, 960 (6th Cir. 2010).

### 1. Reasonable Hourly Rates

As a general matter, an attorney's reasonable hourly rate is calculated according to the "prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 897 (1984). The Sixth Circuit has explained that "the 'prevailing market rate' is that rate which lawyers of comparable skill and experience can expect to command within the venue of the court of record. . . ." *Adcock-Ladd v. Secy' of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000). The Sixth Circuit has clarified that "[t]he appropriate rate ... is not necessarily the exact value sought by a particular firm, but is rather the market rate in the venue sufficient to encourage competent representation." *Sykes v. Anderson*, 419 Fed. App'x 615, 618 (6th Cir. 2011) (quoting *Gonter v. Hunt Valve, Co.*, 510 F.3d 610, 618 (6th Cir. 2007)).

The burden is on the prevailing attorney to justify the reasonableness of a requested fee award. *Blum*, 456 U.S. at 896 n.11. Specifically, the fee applicant must "produce satisfactory evidence-in addition to the attorney's own affidavits-that the requested rates are in line with

those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.* The Court has "broad discretion to determine what constitutes a reasonable hourly rate for an attorney." *Wayne v. Vill. of Sebring*, 36 F.3d 517, 533 (6th Cir. 1994).

Here, there is no dispute that the relevant community is the Eastern District of Michigan. Plaintiff requests the following rates:

| | |
|---|---|
| Ian Lyngklip (admitted 1992; senior partner) | $450 per hour |
| Julie Petrik (admitted 1992) | $350 per hour |
| Carl Schwartz (admitted 2007) | $250 per hour |
| Priya Bali (admitted 2014) | $250 per hour |
| Sylvia Bolos (admitted 2014) | $250 per hour |
| Amanda Logendyke Waldron (admitted 2013) | $200 per hour |
| Michael J. Bonvolanta (admitted 2015) | $200 per hour |
| Emily Reagan (admitted 2014) | $200 per hour |
| Laura Branco (paralegal) | $125 per hour |
| Mykayla Minock (legal assistant) | $50 per hour |
| Emily Reagan (law clerk through May 2014) | $100 per hour |

(Ex. 4 to Pl.'s Mo., Lyngklip Decl. at pp 4-5). In support of the rates requested, Plaintiff submits the declarations of Ian Lyngklip, Julie Petrik, Sylvia Bolos, and Laura Branco. (Ex. 4-7 to Pl.'s Mo.) The declarations speak to the declarant's own qualifications and experience.

Defendants argue that Plaintiff's proposed hourly rates are excessive. According to Defendants, Lyngklip and Petrik's rates should be reduced to $225 per hour, the associate rate should be reduced to a blended $175 per hour, and the law clerk/paralegal rate should be reduced to a blended $75 per hour.

Both parties rely on the State Bar of Michigan's Economics of Law Practice in Michigan Report ("SBM Report"), released in July 2014, as a starting point for determining reasonable hourly rates. (Ex. 8 to Pl.'s Mo.; Ex. 2 to Def.s' Resp.). Michigan federal courts routinely use

6

this publication as evidence of reasonableness. *See Price v. Credit Management*, LP, 2014 WL 4798981, at *3 (E.D. Mich. Sept. 26, 2014) (citing several Eastern District of Michigan cases).

Attorney Lyngklip has 25 years of experience. Lyngklip is the only senior member and managing partner of Lyngklip & Associates Consumer Law Center, and has extensive experience in these types of cases. Lyngklip & Associates is comprised of four attorneys, one paralegal, and one law clerk. (Ex. 4 to Pl.'s Mo., Lyngklip Decl. at ¶ 29).

The SBM Report states that the median hourly rate for attorneys with sixteen to twenty-five years of experience, of which 544 were surveyed, is $269. An attorney with that level of experience in the seventy-fifth percentile bills $350 per hour. The median hourly rate for an attorney in an office comprised of four to six attorneys, of which 302 were surveyed, is $235. The hourly rate for an attorney working at a firm of that size in the seventy-fifth percentile is $300. The median hourly rate for a consumer law attorney, of which 44 were surveyed, is $335 and the rate for an attorney in the seventy-fifth percentile is $400. The Court will accord greater weight to the statistics setting forth hourly rates by years of experience and office size because the groups surveyed were many times larger than the subgroup of consumer attorneys interviewed.

Accordingly, the Court concludes that a reasonable hourly rate for Lyngklip would be $375, which accounts for Lyngklip's extensive expertise in consumer law and the size of his firm. This rate will sufficiently encourage competent representation by experienced counsel in this community.

Plaintiff also seeks fees for eight associate attorneys. Only two associates (Attorneys Petrik and Bolos) have provided declarations as to their experience and qualifications. As to the

7

remaining attorneys, Lyngklip's declaration provides the date in which each individual was admitted to practice law.

Attorney Petrik has 25 years of experience and is an associate at Lyngklip & Associates. (Ex. 5 to Pl.'s Mo., Petrik Decl.). The Court concludes that a reasonable hourly rate for Petrik is $300. This rate will sufficiently encourage competent representation by experienced counsel in this community.

Attorney Bolos has three years of experience and is an associate at Lyngklip & Associates. (Ex. 6 to Pl.'s Mo., Bolos Decl.). Bolos has published articles on collecting FDCPA judgments and has earned speaking engagements at national conferences. The SBM Report states that the median hourly rate for attorneys with three to five of experience, of which 197 were surveyed, is $200. An attorney with that level of experience in the seventy-fifth percentile bills $250 per hour. The Court concludes that a reasonable hourly rate for Bolos is $225. This rate will sufficiently encourage competent representation by experienced counsel in this community.

Attorney Waldron (admitted 2013) has four years of experience and Attorneys Bali and Reagan (both admitted 2014) have three years of experience. Without knowing more, *i.e.*, qualifications/expertise, the Court concludes that a reasonable hourly rate for Waldron, Bali, and Reagan is $200. This rate will sufficiently encourage competent representation by experienced counsel in this community.

Attorney Bonvolanta (admitted 2015) has two years of experience. The SBM Report states that the median hourly rate for attorneys with one to two years of experience, of which 140 were surveyed, is $189. An attorney with that level of experience in the seventy-fifth percentile

bills $225 per hour. Without knowing more, *i.e.*, qualifications/expertise, the Court finds that a reasonable hourly rate for Bonvolanta is $200. This rate will sufficiently encourage competent representation by experienced counsel in this community.

Attorney Schwartz has 10 years of experience. The SBM Report states that the median hourly rate for attorneys with six to ten years of experience, of which 326 were surveyed, is $225. An attorney with that level of experience in the seventy-fifth percentile bills $285 per hour. Without knowing more, *i.e.*, qualifications/expertise, the Court concludes that $225 per hour is a reasonable hourly rate. This rate will sufficiently encourage competent representation by experienced counsel in this community.

Plaintiff seeks a $125 hourly rate for Laura Branco, a paralegal at Lyngklip & Associates. Plaintiff does not provide any evidence to suggest what a reasonable rate for a paralegal in this community may be. However, other courts within this district have concluded that a rate of $95 is reasonable. *See e.g.*, *Clements v. Prudential Protective Servs., LLC*, 2015 WL 1897661, at *9-10 (E.D. Mich. Apr. 27, 2015). The Court concludes that $95 is a reasonable hourly rate for paralegal work.

Plaintiff also seeks a $50 hourly rate for Mykayla Minock, a legal assistant. Plaintiff does not provide evidence suggesting what a reasonable rate for a legal assistant in this community may be. Based upon this legal market, the Court concludes that a $50 hourly rate is reasonable for the work of a legal assistant.

> **2. Plaintiff's Attorneys Expended An Unreasonable Amount Of Hours Litigating This Case**

Once the Court determines the reasonable hourly rate, it must multiply that rate by hours reasonably expended. When assessing a party's request for reasonable attorney fees, the Court

9

should "exclude from [the] initial fee calculation hours that were not 'reasonably expended.'" *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).

"The party seeking attorney's fees bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Yellowbook Inc. v. Brandeberry,* 708 F.3d 837, 848 (6th Cir. 2013) (internal quotation marks and citation omitted). "The key requirement for an award of attorney fees is that the documentation offered in support of the hours charged must be of sufficient detail ... to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended. . . ." *United States ex rel. Lefan v. Gen. Elec. Co.*, 397 Fed. App'x 144, 148-49 (6th Cir. 2010).

The Court must "question the time, expertise, and professional work of [the] lawyer" applying for fees. *Earl v. Beaulieu*, 620 F.2d 101, 103 (5th Cir. 1980). And, in reaching the appropriate award, the Court "is required to give a clear explanation" as to its reasoning. *Moore v. Freeman*, 355 F.3d 558, 566 (6th Cir. 2004). Importantly, however, "trial courts need not, and indeed should not, become green-eyeshade accountants." *Fox v. Vice*, 563 U.S. 826, 838 (2011).

Here, Plaintiff submits a 115-page billing statement to support the 1,170.6 hours billed in this case. (Ex. 1 to Pl.'s Mo.). The following is a breakdown of the hours expended by each individual:

    Michael Bonvolanta – 325.3 hours
    Ian Lyngklip – 286 hours
    Amanda Logendyke – 270.4 hours
    Laura Branco – 136.8 hours
    Julie Petrik – 45.1 hours
    Bryan Kontry – 42.4 hours
    Megan Mull – 34.8 hours
    Sylvia Bolos – 10 hours

        Kylie Johnson – 5.8 hours
        Wedad Ibrahim – 5.4 hours
        Priya Bali – 3 hours
        Carl Schwartz – 3 hours
        Natalka Storoshchuk – 2.5 hours
        Emily Reagan – 0.1 hours

(Ex. 3 to Pl.'s Mo.).

Defendants argue that 1,170.6 hours is an unreasonable amount of time for Plaintiffs to have expended on this case. Defendants advance several arguments in support of an across-the-board reduction to the hours spent litigating this case. Alternatively, Defendants scrutinize Plaintiff's billing sheet, line by line, objecting to specific hours billed. Defendants conclude that $126,481 should be reduced from Plaintiff's requested fee award. Plaintiff responds to each of Defendants' objections (either agreeing or disagreeing to waive the fees in question). In total, Plaintiff agrees to reduce his total fees by 30%.

It is without question that Plaintiff's attorneys expended an exorbitant amount of time on this case. It is also without question that Defendants' dilatory litigation strategy largely contributed to these excessive figures. However, Defendants are not entirely to blame for the unreasonable amount of time billed.

This case did not involve novel or difficult questions. Instead, it involved relatively straight forward FDCPA and TCPA claims. The straight forward nature of the issues, coupled with Mr. Lyngklip's vast experience litigating such issues, showcases "poor judgment" in expending this amount of time on a case of this nature. *See Coulter v. State of Tenn.*, 805 F.2d 146, 151 (6th Cir. 1986) (hours actually spent on a case may still be found excessive if "the lawyer used poor judgment in spending too many hours on some part of the case").

To make matters worse, this case was obviously over-staffed on Plaintiff's side – at least

11

nine attorneys have billed time to this case. *See Hensley*, 461 U.S. at 433 ("Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good faith effort to exclude from a fees request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission") (citations omitted).

It is also obvious, after only a cursory review of the billing statement, that tasks were over-billed. For example, the billing statement indicates that Attorney Bonvolanta spent approximately 60 hours preparing and drafting Plaintiff's partial motion for summary judgment. The Court finds this surprising considering the fact that the motion was inadequately briefed. In fact, the Court recalls spending countless of its own hours researching case law and applying the law to the relevant facts. (*See* Doc. #164 at Pg ID 2097 (noting "that neither party has adequately stated and supported its position as to certain claims with relevant and sufficient authority" and that "the parties have also failed to adequately apply the law to the facts presently before the Court")).

Another example is the time billed by Attorney Petrik for preparing billing entries for the fee petition. Although Petrik is entitled to recover for time spent preparing a successful fee petition, the billing statement entries are vague and duplicative. For instance, on June 28, 2017, Petrik billed 7.5 hours for "Preparation: edit/Ation/Billing Items in Action Step." (Ex. 1 to Pl.'s Mo. at Pg ID 2512). On that *same* day, Petrik billed another 7.5 hours for "Review: edit and trim billing entries on matter for fee petition." (*Id.*). These time entries are duplicative.

A cursory review of the billing statement also reflects unnecessary and duplicative efforts by Mr. Lyngklip and his associates. Considering the fact that at least eight associates assisted in

this case–billing nearly 700 hours–the Court finds Lyngklip's 286 hours excessive.

In addition to the shortcomings listed above, there are also flaws in Plaintiff's billing statement. First, the statement contains vague descriptions of the services rendered, making it difficult to determine with certainty whether services were necessary.[3] Moreover, the billing statement makes it nearly impossible to discern which services pertained to Plaintiff's TCPA claims. This is important because Plaintiff is not entitled to attorney fees as to services relating to TCPA claims.

Second, Plaintiff appears to have billed for matters wholly unrelated to this case. For example, Plaintiff bills for a December 15, 2015 "matter-related email" regarding an "appeal brief." (*See* Ex. 1 to Pl.'s Mo. at p. 64). To the Court's knowledge, Plaintiff has not filed an appeal in this matter.

Third, Plaintiff's statement includes time exclusively spent on matters relating to defaulted defendants, matters relating to voluntarily dismissed defendants, and on matters relating to defendants who previously settled with Plaintiff. Although Plaintiff's claims against these defendants arise from the same set of facts as the facts giving rise to the claims against PDL and Belstadt, Plaintiff bears the burden of demonstrating that these requested fees are reasonable. Some of the billing descriptions provided by Plaintiff suggest that the tasks at issue relate exclusively to other defendants.

And finally, Plaintiff's billing statement includes 90.9 hours billed by associates/support

---

[3] For example, Plaintiff titles emails as "matter related emails." Vague descriptions then follow. *See e.g.*, Ex. 1 to Pl.'s Mo. at pp. 18, 21, 22, 23, 28, 29 (where Plaintiff bills for "Matter-related" emails, describing the emails as follows: "Sent email to Attorney Logendyke re: matter").

staff for whom Plaintiff does not seek fees. (*See* Ex. 3 to Pl.'s Mo. (listing 5.4 hours for Wedad Ibrahim; listing 2.5 hours for Natalka Storoshchuk; listing 5.8 hours for Kylie Johnson; listing 42.4 hours for Bryan Kontry; and listing 34.8 hours for Megan Mull)).

### 3. A 40% Reduction In Overall Lodestar Figure Is Appropriate Here

The Court declines to expend the judicial resources to engage in a line-by-line analysis of Plaintiff's 115-page billing statement. The fundamental flaws in Plaintiff's fee petition–excessive, duplicative, unnecessary hours, over-staffing, vague descriptions–make a line-by-line analysis of the billing statement impractical.

Where, as here, reductions to the hours expended are clearly appropriate and fee documentation is voluminous, the Court "has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure as a practical means of trimming the fat from a fee application." *Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992) (internal quotation marks omitted); *Auto Alliance Int'l, Inc. v. U.S. Customs Serv.*, 155 Fed. App'x 226, 228 (6th Cir. 2005).

The Court chooses to make an across-the-board percentage cut in the finale lodestar figure to account for the duplicative, unnecessary, and improper billing outlined above. Before applying this reduction, the Court must first multiply each attorney's reasonable hourly rate with the hours expended in this case.

Attorney Lyngklip's $375 per hour rate multiplied by 286 hours, amounts to $107,250. Attorney Bonvolanta's $200 per hour rate multiplied by 325.3 hours, amounts to $65,060. Attorney Logendyke/Waldron's $200 per hour rate multiplied by 270.4 hours, amounts to $54,080. Attorney Petrik's $300 per hour rate multiplied by 45.1 hours, amounts to $13,530.

Attorney Bolos's $225 per hour rate multiplied by 10 hours, amounts to $2,250. Attorney Bali's $200 per hour rate multiplied by 3 hours, amounts to $600. Attorney Schwartz's $225 per hour rate multiplied by 3 hours, amounts to $675. Attorney's Reagan's $200 hourly rate multiplied by .1 hours, amounts to $20. Paralegal Branco's $95 per hour rate multiplied by 136.8 hours amounts to $12,996.

The total amount of fees, rounded to the nearest whole number, for the hours expended in this case amounts to $256,461. This does not include the 90.9 hours billed by the five individuals for whom Plaintiff does not seek fees and does not provide a job title/function.

The Court concludes that a 40% reduction to the overall lodestar award is reasonably necessary to account for the deficiencies outlined above. Moreover, as previously mentioned, Defendants raise a number of individualized objections to the billing entries. These objections include duplicative billing, vague billing entries, billing attorney time for what could have been done by clerical staff, billing for unnecessary discovery, billing for travel time, billing for time spent exclusively on other defendants. While the Court would not sustain every objection, the majority are well taken. And in response to Defendants' objections, Plaintiff agreed to waive certain fees, resulting in a 30% reduction.[4] Taking into account Defendants' objections and Plaintiff's concession, a 40% total reduction in the final lodestar figure is reasonable.

Accordingly, the attorney fees in this case reasonably amount to $153,877.

**4.        Whether Lodestar Should Be Further Reduced To Reflect "Limited Success"**

Once the Court determines the appropriate lodestar amount, it may still "adjust the fee

---

[4] As previously noted, the 30% figure was computed by Plaintiff using the hourly rates proposed by Plaintiff.

upward or downward" based upon the "results obtained." *Hensley*, 461 U.S. at 434. Here, Defendants essentially argue that Plaintiff's success was limited because he was only awarded $6,000 in damages as to his FDCPA and MOC claims. The Court is not persuaded. Plaintiff received partial summary judgment as to liability and statutory damages on a number of his FDCPA and MOC claims. Plaintiff also settled his remaining claims for actual damages. The Court concludes that Plaintiff achieved successful results.

## CONCLUSION

Accordingly, and for the reasons stated above, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Attorney Fees As To Defendants PDL and Belstadt is **GRANTED IN PART** and **DENIED IN PART. IT IS FURTHER ORDERED** that **Plaintiff is entitled to reasonable attorney fees of $153,877.**

**IT IS SO ORDERED.**

                                                 s/Sean F. Cox
                                                 Sean F. Cox
                                                 United States District Judge

Dated: August 18, 2017

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 18, 2017, by electronic and/or ordinary mail.

                                                 s/Jennifer McCoy
                                                 Case Manager